**MUSICK, PEELER & GARRETT LLP**
ATTORNEYS AT LAW
ONE WILSHIRE BUILDING
624 SOUTH GRAND AVENUE, SUITE 2000
LOS ANGELES, CALIFORNIA 90017-3383
TELEPHONE (213) 629-7600
FACSIMILE (213) 624-1376

David A. Tartaglio (State Bar No. 117232)
*d.tartaglio@mpglaw.com*
Laura K. Kim (State Bar No. 197944)
*l.kim@mpglaw.com*

Attorneys for Defendants PHELPS DUNBAR, LLP

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CERTAIN UNDERWRITERS AT LLOYD'S, LONDON,, <br><br> Plaintiff, <br><br> vs. <br><br> PHELPS DUNBAR, LLP; LINDAHL BECK, LLP; and DOES 1-100, inclusive, <br><br> Defendants. | CASE NO. 2:17-cv-05232-JAK-AS <br><br> **[REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL]** <br><br> **NOTICE OF MOTION TO COMPEL ARBITRATION, AND EITHER TO STAY OR DISMISS THE PROCEEDING; DECLARATIONS OF MARSHALL M. REDMON AND LAURA K. KIM** <br><br> Date:  October 23, 2017 <br> Time:  8:30 a.m. <br> Crtrm: 10B <br><br> Assigned for All Purposes to: <br> Hon. Kronstadt, Courtroom 10B |

## TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE** that on October 23, 2017 at 8:30 a.m. or as soon thereafter as this matter may be heard in Courtroom 10B of the above-entitled court, located at 255 E. Temple Street, Los Angeles, California, Defendant Phelps Dunbar, LLP ("PHELPS") will and hereby does moves for an Order (1) compelling arbitration of the claims in the Plaintiff Certain Underwriters At Lloyds' London ("Underwriters") Complaint and either (2) staying the instant action or (3)

1    dismissing the complaint in its entirety.  Phelps further moves to dismiss based on

2    *forum non conveniens.*

3        PHELPS' Motion is brought pursuant to 9 U.S.C. §§ 3, 4, & 201 and Federal

4    Rule of Civil Procedure 12(b)(1) on the grounds that in the "Beazley Group Claims

5    Terms of Service" contract ("Agreement") entered into between PHELPS and

6    Underwriters, the parties agreed that any " ███████████████████████

7    ████████████████████████████████████████████████████████

8    ████████████████████████████████████████████████████████

9    ████████████████████."  In addition, PHELPS' Motion is brought

10   pursuant to the doctrine of *forum non conveniens* and the United States Supreme

11   Court's holding in <u>Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for Western</u>

12   <u>Dist. of Texas</u> (2013) 134 S.Ct. 568, on the grounds that this case must be dismissed

13   as to PHELPS because the Courts are not the proper forum to hear or decide this

14   dispute.

15       This Motion is based upon this Notice of Motion, the Memorandum of Points

16   and Authorities attached hereto, the Declarations of Marshall Redmon and David A.

17   Tartaglio with Exhibits thereto, filed concurrently herewith, all records and files in

18   this action, any other matter of which this Court may take judicial notice, and such

19   additional evidence and arguments as may be presented.

20       This motion is made following the conference of counsel pursuant to Local

21   Rule 7-3 which took place on July 14 and 17, 2017 (See Declaration of Laura K.

22   Kim).

23   DATED:  July 21, 2017        MUSICK, PEELER & GARRETT LLP

25           By:     /s/David A. Tartaglio

26           David A. Tartaglio

             Laura K. Kim

27           Attorneys for Defendants PHELPS

28           DUNBAR, LLP

MUSICK, PEELER
& GARRETT LLP

ATTORNEYS AT LAW

1061214.1

2

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND EITHER TO DISMISS OR STAY
PROCEEDING

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  INTRODUCTION

Underwriters and PHELPS entered into a contractual agreement to submit all disputes between themselves to binding arbitration.  Accordingly, this Court should enforce the parties' agreement to arbitrate Underwriters' claim for legal malpractice against PHELPS.  After compelling arbitration, this Court should either stay or dismiss the entire action as to PHELPS.

### II.  PROCEDURAL HISTORY

On May 19, 2017, Underwriters filed a complaint against PHELPS alleging a cause of action for legal malpractice/negligence in the Los Angeles Superior Court. On July 14, 2017, PHELPS removed the action to this Court based on federal question and 9 U.S.C. § 205.

### III.  STATEMENT OF FACTS

In the complaint, Underwriters allege that they consist of Syndicates 623 and 2623.  (Complaint, ¶3).  Beazley Furlonge Ltd, Beazley Insurance Company, and its parent, affiliated and subsidiary entities, include Syndicates 623 and 2623 at Lloyd's, London.  (Declaration of Marshall Redmon "Redmon Decl.", ¶2). Underwriters' has its principal place of business in London, England.  (Redmon Decl., ¶4). Underwriters also allege that PHELPS "was engaged as [Underwriters] counsel with respect to certain litigation in the State of California ('California Litigation')." (Complaint, ¶4).

Underwriters claim that, on or about October 9, 2012, they hired PHELPS "to provide legal advice and act as counsel for [Underwriters] with respect to California Litigation." (Complaint, ¶10).  Underwriters allege that they entered into an attorney-client relationship with PHELPS.  (Complaint, ¶10).  Underwriters assert that PHELPS "failed to exercise reasonable care and skill as exercised by like attorneys in good standing in the community to take all steps necessary to protect [Underwriters] interests and to secure its rights and remedies allowed by law."

MUSICK, PEELER
& GARRETT LLP

ATTORNEYS AT LAW

1061214.1

3

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND EITHER TO DISMISS OR STAY
PROCEEDING

(Complaint, ¶15).  As a result, Underwriters allege that they have  been damaged by PHELPS' breach of duties and negligence.  (Complaint, ¶¶ 16 and 17).

PHELPS and Underwriters entered into the Agreement which sets forth the terms and conditions concerning Underwriters appointment of PHELPS as counsel for Underwriters in various litigation matters.  (Redmon Decl., ¶¶2 & 3, Exh. "1").  The Agreement governs the work Phelps performed for Beazley in the California Litigation because it supersedes the agreement that was in effect in 2012.  (Redmon Decl., ¶6, Exh. "1").  The Agreement specifically states that it "███████

████████████████████████████████████████████████████████████

███████." (Redmon Decl., ¶6, Exh. "1").  In addition, the Agreement expresses the parties' contractual undertaking to resolve any disputes by mandatory arbitration.

Paragraph 30 of the Agreement states:



In Appendix A of the Agreement, Beazley chose England and Wales as the Choice of Law and Jurisdiction.  (Redmon Decl., ¶9, Exh. "1").  Underwriters' claim for legal malpractice is governed by this Agreement.  PHELPS was appointed by Underwriters to provide legal services in connection with the California Litigation referenced in Plaintiff's complaint.  (Redmon Decl., ¶5).  PHELPS provided legal advice to Underwriters' in the California Litigation pursuant to the terms of the Agreement.  Therefore, before addressing the merits of this action, this Court must consider the terms of the Agreement which contains a mandatory arbitration clause

MUSICK, PEELER
& GARRETT LLP

ATTORNEYS AT LAW

1061214.1                                                    4

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND EITHER TO DISMISS OR STAY
PROCEEDING

that specifies that this dispute must proceed in arbitration before the London Court of International Arbitration.  This Court should conclude that Arbitration is the only proper venue for resolution of this dispute as Underwriters and PHELPS contractually stipulated.

## IV.   UNDERWRITERS SHOULD BE COMPELLED TO ARBITRATE THE ALLEGATIONS IN THE COMPLAINT BECAUSE UNDERWRITERS CONTRACTUALLY  AGREED TO RESOLVE ALL DISPUTES BY MANDATORY ARBITRATION

The New York Convention governs the enforceability of the international arbitration provision in the Agreement.  The New York Convention is an international treaty that guarantees citizens of signatory countries the right to enforce agreements to arbitrate disputes.  The United States ratified the New York Convention in 1968, and is among the more than one hundred other sovereign signatories to the treaty, including the United Kingdom.[1]  To gain rights under the New York Convention for American citizens, Congress enacted Chapter 2 of the Federal Arbitration Act, 9.U.S.C. §§ 201–208 (the "Convention Act") in 1970 to guarantee enforcement of arbitral contracts and awards made pursuant to the New York Convention in United States courts.[2]  As the Supreme Court has recognized, "[t]he goal of the Convention, and the principal purpose underlying American adoption and implementation of it, was to encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standard by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries."[3]  As the Supreme Court has also

---

[1]     Senate Comm. on Foreign Relations, Foreign Arbitral Awards, S. Rep. No. 702, 91st Cong., 2d Sess. 5 (1970), reprinted in 1970 U.S.C.C.A.N. 3601, 3602; *see also* www.newyorkconvention.org.

[2]     New York Convention, Art. XIV ("A Contracting State shall not be entitled to avail itself of the present convention against other Contracting States except to the extent that it is itself bound to apply the Convention.").

[3]     Scherk v. Alberto-Culver Co., 417 U.S. 506, 520 n.15 (1974).

recognized, the strong federal policy favoring the enforcement of arbitration agreements "applies with special force in the field of international commerce."[4]  As such, when international arbitration agreements are concerned, they must be vigorously enforced, "even assuming that a contrary result would be forthcoming in a domestic context."[5]

The New York Convention contemplates "a very limited inquiry" by courts when considering whether a given dispute must be submitted to arbitration.[6]  The Convention requires district courts to defer to arbitration if: (1) there is an agreement in writing to arbitrate the dispute; (2) the agreement provides for arbitration in the territory of a Convention signatory; (3) the agreement to arbitrate arises out of a commercial legal relationship; and (4) the agreement is not entirely between citizens of the United States.[7]  That each of these requirements is met here cannot be seriously disputed.

Taking these requirements in reverse order, Requirement 4 is met because at least one party to the Arbitration Agreement (Underwriters) is not a citizen of the United States.  (Redmon Decl. ¶2).  Requirement 3 is satisfied because the Arbitration Agreement arises out of the commercial legal relationship between the Underwriters and PHELPS.

Requirement 2 is satisfied by the Arbitration Agreement's provision that "any dispute or differences arising out of relating to this Agreement will be subject to the laws of England and Wales and shall be submitted to the decision of a single arbitrator before the LCIA [London Courts of International Arbitration]."   Both PHELPS' principal place of business (Louisiana) and the Underwriters' principal

---

[4]   Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 631 (1985).
[5]   Id. at 629.
[6]   Francisco v. STOLT ACHIEVEMENT MT, 293 F.3d 270, 273 (5th Cir. 2002) (quoting Sedco, Inc. v. Petroleos Mexicanos Mexican Nat'l Oil Co., 767 F.2d 1140, 1144 (5th Cir. 1985)).
[7]   Francisco, 293 F.3d at 273 (citing Sedco, 767 F.2d at 1144–45).

MUSICK, PEELER
& GARRETT LLP

ATTORNEYS AT LAW

1061214.1

6

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND EITHER TO DISMISS OR STAY
PROCEEDING

place of business (London)—which are the locations with the closest connection to this dispute—are within the territory of Convention signatories.

Finally, Requirement 1 asks whether the parties agreed to arbitrate the dispute in question.  Determining whether the parties agreed to arbitrate the dispute in question involves two considerations: (a) whether a valid agreement to arbitrate between the parties exists; and (b) whether the dispute in question falls within the scope of the arbitration agreement.[8]  The first consideration should not be contested, as it is beyond dispute that the Agreement entered into by PHELPS and Underwriters includes a valid, binding arbitration agreement.  Moreover, an arbitration clause in a contract meets the Convention's "agreement in writing" requirement.

As to the second consideration—whether the dispute falls within the arbitration agreement's scope—the Arbitration Agreement requires that the parties arbitrate "any dispute or difference arising out of the Agreement. . . ."  Thus, this Court should compel this case to Arbitration.

In addition, under the Federal Arbitration Act ("FAA") a party may move for an order compelling arbitration:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, *for an order directing that such arbitration proceed in the manner provided for in such agreement*. . . 9 U.S.C. §4 (emphasis added).

Moreover, a party may move for an order staying the action pending arbitration:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court. . .upon being satisfied that the issue involved in

---

[8]   Balen v. Holland America Line, Inc., 583 F.3d 647 (9th Cir. 2009).

MUSICK, PEELER
& GARRETT LLP

ATTORNEYS AT LAW

1061214.1

7

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND EITHER TO DISMISS OR STAY
PROCEEDING

such suit or proceeding is referable to arbitration under such an agreement, *shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement*, providing the applicant for the stay is not in default in proceeding with such arbitration.  9 U.S.C. §3 (emphasis added).

"It has been established that where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute …"  AT & T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643, 650 (1986).  "The court must ***rigorously enforce*** arbitration agreements and must order arbitration if it is satisfied that the making of the agreement for arbitration is not in issue." [Emphasis added] [internal quotation omitted].  Simula, Inc. v. Autoliv, Inc., 175 F.3d 716, 719 (9th Cir.1999) (citing Dean Witter Reynolds v. Byrd, 470 U.S. 213, 218, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985));  Willis v. Nationwide Debt Settlement Group (D. Or. 2012) 878 F.Supp.2d 1208, 1214.  As set out above, the FAA requires courts to stay judicial proceedings and compel arbitration of claims covered by a written and enforceable arbitration agreement. 9 U.S.C § 3.  When there is a broad arbitration clause such as the one found in the Agreement, the test is whether the factual allegations "'touch matters' covered by the contract containing the arbitration clause."  Simula, Inc. v. Autoliv, Inc., 175 F3d 716, 721 (9th Cir 1999); see also Willis v. Nationwide Debt Settlement Group (D. Or. 2012) 878 F.Supp.2d 1208, 1214.

The FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24–25, 103 S.Ct. 927, 941 (1983).  Further, it is well settled that the court must construe the scope of an

/ / /

1   arbitration agreement liberally.  <u>Simula, Inc. v. Autoliv, Inc</u>., 175 F.3d 716, 720 (9th

2   Cir. 1999).

3           Under the FAA, the court is required to direct arbitration once it is satisfied

4   that the making of the agreement for arbitration is not in issue." <u>Three Valleys Mun.</u>

5   <u>Water Dist. v. E.F. Hutton & Co., Inc</u>. 925 F.2d 1136, 1139 (9th Cir. 1991).  The

6   Court's role under the FAA is therefore limited to determining (1) whether a valid

7   agreement to arbitrate exists and, if so, (2) whether the agreement encompasses the

8   dispute at issue.  <u>Lifescan, Inc. v. Premier Diabetic Servs., Inc</u>., 363 F.3d 1010, 1012

9   (9th Cir. 2004).  If the response is affirmative on both counts, then the FAA requires

10   the Court to enforce the arbitration agreement.   <u>Chiron Corp. v. Ortho Diagnostic</u>

11   <u>Sys., Inc.</u>, 207 F.3d 1126, 1130 (9th Cir. 2000).

12           Under the standard set forth by the FAA, this Court should direct the parties

13   to arbitrate the instant dispute.  The Agreement sets forth the terms and conditions

14   concerning Underwriters appointment of PHELPS as counsel for Underwriters in

15   various litigation matters.  (Redmon Decl., ¶7).  The Agreement clearly and

16   unambiguously states at Paragraph 30 that "any dispute or differences arising out of

17   or relating to this Agreement will be subject to the laws of England and Wales and

18   shall be submitted to the decision of a single arbitrator before the LCIA."  (Redmon

19   Decl., ¶8, Exh. "1").  In its complaint, Underwriters allege that on or about October

20   9, 2012, they hired PHELPS "to provide legal advice and act as counsel for

21   [Underwriters] with respect to California Litigation." (Complaint, ¶10).

22   Underwriters assert that PHELPS "failed to exercise reasonable care and skill as

23   exercised by like attorneys in good standing in the community to take all steps

24   necessary to protect [Underwriters] interests and to secure its rights and remedies

25   allowed by law." (Complaint, ¶15).  PHELPS' work in respect to the legal

26   malpractice claim arose out of and was directly related to the Agreement.  (Redmon

27   Decl., ¶¶ 5-8.)  As a result, Underwriters allege that they have been damaged by

28   PHELPS' breach of duties and negligence.  (Complaint, ¶¶ 16 and 17).

MUSICK, PEELER
& GARRETT LLP

ATTORNEYS AT LAW

1061214.1
1061214.1

9

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND EITHER TO DISMISS OR STAY
PROCEEDING

As such, there has a been a positive showing that: (1) a valid agreement to arbitrate all disputes related to or arising out of or connected with the Agreement; and (2) the scope of the arbitration clause in Paragraph 30 of the Agreement encompasses the instant dispute.  Therefore, pursuant to the authorities cited herein, the Court should enforce the arbitration agreement.

## III.   THE ARBITRATION CLAUSE CONTAINING A FORUM-SELECTION CLAUSE REQUIRES DISMISSAL OF THE COMPLAINT IN ITS ENTIRETY

### A.   The Forum Selection Clause in the Agreement Should be Enforced

An agreement to arbitrate before a specified tribunal is, in effect, a specialized kind of forum selection clause that determines not only the situs of suit but also the procedure to be used in resolving a dispute.  Scherk v. Alberto-Culver Co., 417 U.S. 506 (S.Ct. 1974).  An Agreement containing a forum selection clauses are presumed to be valid and will be given effect in the absence of a showing that enforcement of such a clause would be unreasonable (M/S Bremen v. Zapata Offshore Co. 407 U.S. 1, 92 S. Cto. 1907 (1972); Smith, Valentino & Smith, Inc. v. Superior Court 17 Cal.3d 491 (1976); Furda v. Superior Court 161 Cal.App.3d 418 (1984).  Prior to the Supreme Court's decision in Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for Western Dist. of Texas (2013) 134 S.Ct. 568, 580, courts in this and other circuits enforced forum-selection clauses under the standard articulated in M/S Bremen v. Zapata Off–Shore Co., 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972); see Argueta v. Banco Mexicano, S.A., 87 F.3d 320, 324–25 (9th Cir.1996) [setting out the standards for enforceability of forum-selection clauses in federal cases.]  Federal law governs the validity of a forum selection clause. Manetti–Farrow, Inc. v. Gucci America, Inc., 858 F.2d 509, 513 (9th Cir.1988).

Under the Bremen standard, forum-selection clauses are prima facie valid and will be enforced unless the resisting party proves that enforcement is unreasonable.

/ / /

1    <u>Id</u>. at 1913.  A party resisting such enforcement bears a "heavy burden of proof."

2    <u>Bremen</u>, 92 S.Ct. at 1917.  Underwriters cannot satisfy this burden.

3       The Supreme Court has construed this exception to the enforcement of forum

4    selection clauses narrowly.  A forum selection clause is unreasonable if (1) its

5    incorporation into the contract was the result of fraud, undue influence, or

6    overwhelming bargaining power, <u>Carnival Cruise Lines v. Shute</u>, 499 U.S. 585 at

7    591, 111 S.Ct. 1522 at 1526, (1991); <u>Bremen</u>, 407 U.S. at 12–13, 92 S.Ct. at 1914;

8    (2) the selected forum is so "gravely difficult and inconvenient" that the

9    complaining party will "for all practical purposes be deprived of its day in court,"

10    <u>Bremen</u>, 407 U.S. at 18, 92 S.Ct. at 1917; or (3) enforcement of the clause would

11    contravene a strong public policy of the forum in which the suit is brought.  <u>Id</u>. at

12    15, 92 S.Ct. at 1916.  The party challenging the clause must "clearly show that

13    enforcement would be unreasonable and unjust, or that the clause was invalid for

14    such reasons as fraud or over-reaching." <u>Id</u>. at 15, 92 S.Ct. 1907; <u>Murphy v.</u>

15    <u>Schneider National, Inc</u>. (9th Cir. 2004) 362 F.3d 1133, 1140.

16       Pursuant to Supreme Court most recent pronouncement in <u>Atlantic Marine</u>,

17    the burden facing those parties challenging a forum selection clause is even greater,

18    as forum selection clauses must be "given controlling weight in all but the most

19    exceptional cases," 134 S.Ct. at 579 (internal quotation marks and citation omitted.

20    The Supreme Court recognized that when parties have contracted in advance to

21    litigate disputes in a particular forum, courts should not unnecessarily disrupt the

22    parties' settled expectations. A forum-selection clause may have figured centrally in

23    the parties' negotiations and may have affected how they set monetary and other

24    contractual terms; it may, in fact, have been a critical factor in their agreement to do

25    business together in the first place. Therefore, in all but the most unusual cases, "the

26    interest of justice" is served by holding parties to their bargain." <u>Atlantic Marine</u>,

27    <u>supra</u>, 134 S.Ct. at 583.

28    / / /

MUSICK, PEELER
& GARRETT LLP

ATTORNEYS AT LAW

1061214.1

11

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND EITHER TO DISMISS OR STAY
PROCEEDING

1  Here, this is not an "exceptional" or "most unusual" case such that the parties

2  agreement to select a forum for the adjudication of all disputes should not be

3  enforced.

4      **B.**    <u>**The Complaint Should be Dismissed in its Entirety As to Phelps**</u>

5          <u>**Pursuant to the Arbitration Clause that Designates the Forum for**</u>

6          <u>**Dispute Resolution**</u>

7  Prior to <u>Atlantic Marine</u>, forum selection clauses were enforced through a

8  motion to dismiss under Federal <u>Rules of Civil Procedure</u>, Rule 12(b)(3).  In

9  <u>Atlantic Marine</u>, however, the Supreme Court held that appropriate way to enforce a

10  forum-selection clause pointing to a state or foreign forum is through the doctrine of

11  *forum non conveniens*.  <u>Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for</u>

12  <u>Western Dist. of Texas,</u> 134 S.Ct. 568, 580 (2013).

13  For the cases calling for a nonfederal forum, the doctrine of *forum non*

14  *conveniens* "has continuing application in federal courts."  <u>Sinochem Int'l Co. v.</u>

15  <u>Malaysia Int'l Shipping Corp.</u>, 549 U.S. 422, 430 (2007).  Courts should evaluate a

16  forum-selection clause pointing to a nonfederal forum in the same way that they

17  evaluate a forum-selection clause pointing to a federal forum.  <u>Atlantic Marine,</u>

18  <u>supra</u>, 134 S.Ct. at 580; <u>Hunt Wesson Foods, Inc. v. Supreme Oil Co.</u>, 817 F.2d 75,

19  77 (9th Cir.1987);  <u>Foundation Fitness Products, LLC v. Free Motion Fitness</u> (D.

20  Or. 2015) 121 F.Supp.3d 1038.

21  Under a traditional *forum non conveniens* analysis, the court conducts a two-

22  step inquiry.  First, the court must establish the existence of an alternative forum in

23  which the case may be brought.  <u>Piper Aircraft Co. v. Reyno</u>, 454 U.S. 235, 102

24  S.Ct. 252, 265 n. 22, 70 L.Ed.2d 419 (1981). Prior to <u>Atlantic Marine</u>, "[i]f an

25  alternative forum is both available and adequate, the district court must then weigh

26  various private and public interest factors to determine whether dismissal is

27  warranted." <u>Saqui v. Pride Cent. Am.</u>, *LLC,* 595 F.3d 206, 211 (5th Cir.2010);

28  <u>Wellogix, Inc. v. SAP America, Inc.</u> (S.D. Tex. 2014) 58 F.Supp.3d 766, 780-81

**MUSICK, PEELER**
**& GARRETT LLP**

**ATTORNEYS AT LAW**

1061214.1

12

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND EITHER TO DISMISS OR STAY
PROCEEDING

However, the Supreme Court in <u>Atlantic Marine</u> instructed that lower courts are to consider *only* public-interest factors when a forum-selection clause is involved because the private-interest factors are now deemed "to weigh entirely in favor of the preselected forum." <u>Id</u>. at 581.  A forum-selection clause thus may be disregarded only where "the public-interest factors *overwhelmingly* disfavor" dismissal.  <u>Id.</u> at 583 (emphasis added).  When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation.  <u>Id.</u> at 582.  A court accordingly must deem the private-interest factors to weigh entirely in favor of the preselected forum.  "[w]hatever 'inconvenience' [the parties] would suffer by being forced to litigate in the contractual forum as [they] agreed to do was clearly foreseeable at the time of contracting." <u>Bremen</u>, <u>supra</u>, 407 U.S. at 17–18; <u>Atlantic Marine,</u> <u>supra</u>, 134 S.Ct. at 582.

### 1.   An Alternative Forum is Both Available and Adequate

"The first requirement for a *forum non conveniens* dismissal is that an adequate alternative forum is available to the plaintiff.  The Supreme Court has held that an alternative forum ordinarily exists when the defendant is amenable to service of process in the foreign forum. <u>Piper Aircraft</u>, 454 U.S. at 254 n. 22, 102 S.Ct. 252; <u>Contact Lumber Co. v. P.T. Moges Shipping Co.</u>, 918 F.2d 1446, 1449 (9th Cir.1990)." <u>Lueck v. Sundstrand Corp</u>. (9th Cir. 2001) 236 F.3d 1137, 1143.  An alternative forum is available when all parties can come within the jurisdiction of that forum.  This threshold test is met here because PHELPS has agreed to arbitration of this dispute before the London Court of International Arbitration. (Redmon Decl., ¶¶7-9).

The foreign forum must also provide the plaintiff with some remedy for his wrong in order for the alternative forum to be adequate.  <u>Id.</u>  However, it is only in "rare circumstances ... where the remedy provided by the alternative forum ... is so clearly inadequate or unsatisfactory, that it is no remedy at all," that this requirement

MUSICK, PEELER
& GARRETT LLP

ATTORNEYS AT LAW

1061214.1

13

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND EITHER TO DISMISS OR STAY
PROCEEDING

is not met.  <u>Lockman Found. v. Evangelical Alliance Mission</u>, 930 F.2d 764, 768 (9th Cir.1991), (quoting <u>Piper Aircraft</u>, 454 U.S. at 254, 102 S.Ct. 252); <u>see also Ceramic Corp.</u>, 1 F.3d at 949; <u>Lueck, supra</u>, 236 F.3d at 1143.  As the parties agreed to the laws of England and Wales are to govern the arbitration, Underwriters cannot claim that they would not have any remedy at all.  Thus, Underwriters cannot satisfy their burden to prove that the alternative forum is not adequate.

### 2.   <u>All Public Interest Factors Favor Arbitration</u>

Public-interest factors include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981).

Far from "overwhelmingly" *disfavoring* dismissal, the public-interest factors strongly support it.  California's public policy favors resolution of disputes through arbitration and arbitration is widely recognized in California as an efficient and speedy forum.  <u>See</u>, <u>Moncharsh v. Heily & Blase</u> (1992) 3 Cal. 4th 1, 9; <u>Morris v. Zuckerman</u>, (1967) 257 Cal. App. 2d 91, 95.  <u>See also</u>, <u>Republic of Nicaragua v. Standard Fruit Co. (9th Cir. 1991) 937 F2d 469, 478</u>.  Therefore, Underwriters cannot point to any public interest factor that favors district court litigation over the agreed-upon arbitration forum.  As the Supreme Court stated in <u>Atlantic Marine</u>, public-interest factors must not only disfavor dismissal, the challenger must show that they *overwhelmingly* disfavor it.  That is not the case here.  As such, the Complaint should be dismissed as to PHELPS and the forum selection clause upheld.

///

///

MUSICK, PEELER
& GARRETT LLP

ATTORNEYS AT LAW

1061214.1

14

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND EITHER TO DISMISS OR STAY
PROCEEDING

## IV. **AFTER COMPELLING ARBITRATION, THE COURT SHOULD EITHER DISMISS OR STAY THIS ACTION AS TO PHELPS**

As set forth above, all of Underwriters' claims are subject to arbitration pursuant to the parties' Agreement. Thus, this Court should compel arbitration and either dismiss or stay the pending litigation against the PHELPS until final resolution of the arbitral tribunal. The FAA expressly provides that a stay of an action shall be issued when the lawsuit is referable to arbitration under a written arbitration agreement. 9 U.S.C. §§ 3, 201.[9] The Court, however, has the discretion to dismiss this action. Sparling v. Hoffman Construction Co., 864 F.2d 635, 638 (9th Cir. 1988) (district court acted within its discretion to dismiss litigation where the arbitration clause required plaintiff to submit all claims to arbitration). See also, Dittenhafer v. Citigroup, No. C 10–1779 PJH, 2010 WL 3063127, at 7 (N.D.Cal. Aug.2, 2010) (compelling arbitration and dismissing case); Underwriters Reinsurance Co. v. Ace American Ins. Co., No. CV0208177CASJTLX, 2003 WL 24011931, at *7–8 (C.D.Cal. Feb.10, 2003); Sea–Land Service, Inc. v. Sea–Land of P.R., Inc., 636 F.Supp. 750, 757 (D.Puerto Rico 1986) ["(g)iven our ruling that all issues raised in this action are arbitrable and must be submitted to arbitration, retaining jurisdiction and staying the action will serve no purpose."]

Moreover, an action is properly dismissed for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) if all claims are arbitrable under the FAA. See: Glaude v. Macy's, Inc., No. 12-CV-5179-PSG, 2012 WL 6019069, at *3 (N.D. Cal. Dec. 3, 2012) ("the court loses its subject matter

---

[9] 9 U.S.C ¶3 states: If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9.U.S.C §201 states: The Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958, shall be enforced in United States courts in accordance with this chapter.

1  jurisdiction over any claims subject to [an] arbitration clause") (citing AT & T

2  Tech., Inc. v. Commun. Workers of America, 475 U.S. 643, 648–50, 106 S.Ct.

3  1415, 89 L.Ed.2d 648 (1986) (explaining how arbitration clauses affect district

4  courts' jurisdiction).

## IV.    CONCLUSION

For the foregoing reasons, PHELPS respectfully requests that the Court

dismiss the Complaint, or in the alternative, compel arbitration of the claims in the

Underwriters Complaint and either stay or dismiss the instant action as to PHELPS.

DATED:  July 21, 2017                    MUSICK, PEELER & GARRETT LLP

By:        /s/David A. Tartaglio
           David A. Tartaglio
           Laura K. Kim
           Attorneys for Defendants PHELPS
           DUNBAR, LLP

MUSICK, PEELER
& GARRETT LLP

ATTORNEYS AT LAW

1061214.1

16

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND EITHER TO DISMISS OR STAY
PROCEEDING

## DECLARATION OF LAURA K. KIM

I, Laura K. Kim, declare as follows:

1.     I am an attorney duly admitted to practice before this Court.  I am a partner with Musick, Peeler & Garrett LLP, attorneys of record for Defendant PHELPS DUNBAR, LLP (Phelps).  I have personal knowledge of the facts set forth herein and if called as a witness, I could and would competently testify thereto.

2.     By email dated July 14, 2017, I met and conferred about the Motion to Compel Arbitration with Plaintiff's counsel Alan Van Gelder.  By email dated July 17, 2017, Mr. Gelder  advised that Plaintiff would oppose the Motion to Compel Arbitration and requested a copy of the "Beazley Group Claims Terms of Service" contract ("Agreement").  True and correct copies of my July 14, 2017 email and Mr. Gelder's July 17, 2017 email are attached as Exhibit "4."

3.     By email dated July 17, 2017, I provided Mr. Gelder with the Agreement and further met and conferred on the Motion.  By email dated July 21, 2017, Mr. Gelder advised that Plaintiff would oppose the Motion.  True and correct copies of my July 17, 2017 email and Mr. Gelder's July 21, 2017 email are attached as Exhibit "5."   The parties were unable to reach agreement.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on this 21st day of July, 2017, at Los Angeles, California.


            /s/Laura K. Kim
          Laura K. Kim

# EXHIBIT 4

## Kim, Laura

| | |
|---|---|
| **From:** | Alan Van Gelder <AVanGelder@gbw.law> |
| **Sent:** | Monday, July 17, 2017 10:28 AM |
| **To:** | Kim, Laura; Bruce Broillet; Scott Carr |
| **Cc:** | Tartaglio, David; Robert Gersten |
| **Subject:** | RE: Certain Underwriters at Lloyd's London v. Phelps et al. |

Laura:

Thank you for your email. We've had a chance to look at your notice for removal and we do not believe the notice of removal sets forth a proper basis for removal to Federal Court. Pursuant to the Local Rules for the US District Court I am writing you as part of a meet and confer ahead of an anticipated motion for remand. Please forward us any documents you claim support your allegations in your notice that there is a proper basis for removal (including the alleged agreement you reference in your notice). The production of such information will also make the meet and confer we would like to conduct with you regarding your future anticipated motions much more productive.

Alan Van Gelder

**From:** Kim, Laura [mailto:L.Kim@MPGLAW.COM]
**Sent:** Friday, July 14, 2017 5:08 PM
**To:** Bruce Broillet; Scott Carr; Alan Van Gelder
**Cc:** Tartaglio, David
**Subject:** Certain Underwriters at Lloyd's London v. Phelps et al.

Counselors,

We represent Phelps Dunbar in this matter. We have removed the state court action to federal court. We write to comply with Local Rule 7-3 of the United State District Court, Central District of California. Phelps will file a motion to compel arbitration and either to stay or dismiss the proceeding on the ground that the parties agreed to submit all their disputes to the London Court of International Arbitration. Phelps also will move to dismiss based on *forum non conveniens*. Please advise if you are agreeable to move this action to Arbitration and/or if you have any information that bears on the merits of the contemplated motion. Otherwise, we will be filing our motion by July 21, 2017. We look forward to hearing from you.

**Laura K. Kim**
*Partner*

| MUSICK PEELER

| | | |
|---|---|---|
| Musick, Peeler & Garrett LLP | Download V-Card | |
| One Wilshire Boulevard, Suite 2000 | l.kim@mpglaw.com | T: 213.629.7633 |
| Los Angeles, CA 90017 | www.musickpeeler.com | F: 213.624.1376 |

The information contained in this communication is protected by the attorney-client and/or the attorney/work product privilege. It is intended only for the use of the addressee, and the privileges are not waived by virtue of this having been sent by e-mail. If the person actually receiving this communication or any other reader of the communication is not the named recipient, or the employee or agent responsible to deliver it to the recipient, any use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by return e-mail or by e-mail to administrator@mpglaw.com, and destroy this communication and all copies thereof, including all attachments.

# EXHIBIT 5

## Kim, Laura

| | |
|---|---|
| **From:** | Alan Van Gelder <AVanGelder@gbw.law> |
| **Sent:** | Friday, July 21, 2017 9:19 AM |
| **To:** | Kim, Laura |
| **Cc:** | Tartaglio, David; Heather Rosing, Esq. (HRosing@Klinedinstlaw.com); AEdelson@Klinedinstlaw.com; Bruce Broillet; Scott Carr; Robert Gersten |
| **Subject:** | RE: Certain Underwriters at Lloyd's London v. Phelps et al. |

Laura:

Thank you for providing me with what you contend is the agreement that forms the basis for your client's removal of this action to Federal Court. We have had a chance to review the document and discuss it with our clients. The document you have provided is NOT the agreement that controls the relationship between Plaintiffs and Phelps Dunbar.

The operative service agreement was fully executed in 2012, and it does NOT contain any arbitration provision. The document you have provided was never signed by Plaintiffs and by its own terms is not effective or enforceable unless executed by all parties. Given that you have not provided to us or to the Court a fully executed agreement, and given that one does not exist, Plaintiffs cannot stipulate to Defendant's motion for arbitration/motion to dismiss. Given that Phelps Dunbar has removed the action to Federal Court based on a document that is not a valid, enforceable contract, Plaintiffs will be moving to remand the matter back to State Court. Please let us know if you will stipulate to remand the matter back to State Court.

Alan Van Gelder

---

**From:** Kim, Laura [mailto:L.Kim@MPGLAW.COM]
**Sent:** Monday, July 17, 2017 12:06 PM
**To:** Alan Van Gelder; Bruce Broillet; Scott Carr
**Cc:** Tartaglio, David; Robert Gersten
**Subject:** RE: Certain Underwriters at Lloyd's London v. Phelps et al.

Alan:

Please find attached the agreement between Beazley and Phelps. As you can see, the same arbitration provision was cited in our Notice of Removal. Kindly advise if you will stipulate to a dismissal in favor of arbitration or if you have any basis to oppose the arbitration request. Otherwise, given the arbitration agreement, the removal was proper and we would respectfully oppose any motion to remand.

**Laura K. Kim**
*Partner*

| MUSICK PEELER

| | | |
|---|---|---|
| Musick, Peeler & Garrett LLP | Download V-Card | |
| One Wilshire Boulevard, Suite 2000 | l.kim@mpglaw.com | T: 213.629.7633 |
| Los Angeles, CA 90017 | www.musickpeeler.com | F: 213.624.1376 |

1