1

**GREENE BROILLET & WHEELER, LLP**
LAWYERS
100 WILSHIRE BOULEVARD, SUITE 2100
P.O. BOX 2131
SANTA MONICA, CALIFORNIA 90407-2131
TEL. (310) 576-1200
FAX. (310) 576-1220

(SPACE BELOW FOR FILING STAMP ONLY)

2

3

4  BRUCE A. BROILLET, State Bar No. 63910
   *bbroillet@gbw.law*
5  SCOTT H. CARR, State Bar No. 156664
   *scarr@gbw.law*
6  ALAN VAN GELDER, State Bar No. 221820
   *avangelder@gbw.law*

7  Attorneys for ___Plaintiff___

8

9           **UNITED STATES DISTRICT COURT**

10          **CENTRAL DISTRICT OF CALIFORNIA**

11

12 CERTAIN UNDERWRITERS AT
   LLOYD'S, LONDON,
13
                        Plaintiff,
14
   vs.
15
   PHELPS DUNBAR, LLP; LINDAHL
16 BECK, LLP; and DOES 1-10, inclusive,
17
                        Defendants.
18

19

20

21

22

23

24

25

26

27

28

CASE NO. 2:17-cv-05232 JAK (ASx)
(Los Angeles Superior Court Case
No. BC662052)

**PLAINTIFFS' OPPOSITION TO
DEFENDANT PHELPS
DUNBAR'S MOTION TO
COMPEL ARBITRATION/
MOTION TO STAY/DISMISS
PROCEEDINGS;
MEMORANDUM OF POINTS
AND AUTHORITIES**

**[Declaration of Alan Van Gelder
and Exhibits Concurrently Filed
Herewith]**

Date  :    October 23, 2017
Time  :    8:30 a.m.
Dept. :    10B

[Assigned for All Purposes to: Hon.
John A. Kronstadt, Courtroom 10B]

# **TABLE OF CONTENTS**

Page

I.  INTRODUCTION. ...................................................................... 1

II.  REQUIREMENTS UNDER THE NEW YORK CONVENTION. .................. 2

III.  THERE IS NO AGREEMENT BETWEEN PHELPS AND PLAINTIFF TO ARBITRATE THIS MATTER. ............................ 4

    A.  The 2012 SLA is the Operative Agreement Between the Parties and Prevents Phelps from Compelling Arbitration. ............................ 5

    B.  By Its Express Terms, the TOS is Not Operative or Effective Without the Signature of Plaintiffs ............................................ 7

    C.  Plaintiffs Did Not Sign or Agree to be Bound by the TOS ................ 10

IV.  PARAGRAPH 30 OF THE TOS DOES NOT PROVIDE A BASIS FOR PHELPS TO COMPEL ARBITRATION. ................................ 13

V.  THIS COURT CANNOT GRANT PHELPS' REQUEST TO COMPEL ARBITRATION AND REQUEST FOR STAY/DISMISSAL ................................................................... 15

VI.  CONCLUSION. ...................................................................... 16

GREENE BROILLET & WHEELER, LLP
P.O. BOX 2131
SANTA MONICA, CA 90407-2131

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1D1C.89

Plaintiffs' Opposition to Defendant Phelps' Motion to Compel Arbitration

# **TABLE OF AUTHORITIES**

Page

<u>Cases</u>

*Amcan Holdings, Inc. v Canadian Imperial Bank of Commerce*
    70 A.D.3d 423 (1st Dep't 2010) ...................................................................8

*Apablasa v. Merritt & Co.*
    176 Cal.App.2d 719 (1959) ............................................................................8

*AT&T Technologies, Inc. v. Communications Workers of America*
    475 U.S. 643 (1986) ......................................................................................16

*Banner Entertainment, Inc. v. Superior Court*
    62 Cal.App.4th 348 (1998) .........................................................................7, 8

*Beck v. American Health Group Int'l., Inc.*
    211 Cal.App.3d 1555 (1989) .........................................................................7

*Calica v Reisman, Peirez, & Reisman*
    296 A.D.2d 367 (2d Dep't 2002) ..................................................................9

*Chloe Z Fishing Co. v. Odyssey Re (London) Ltd.*
    109 F.Supp.2d 1236 (S.D. Cal. 2000) ..........................................................3

*Club Haven Inv. Co., LLC v. Capital Co. of Am, LLC*
    160 F.Supp.2d 590 (S.D.N.Y. 2001) ............................................................9

*Crowley Mar. Corp. v. Boston Old Colony Ins. Co.*
    158 Cal.App.4th 1061 (Ct. App. 2008) ......................................................16

*Davis v. Nordstrom, Inc.*
    755 F.3d 1089 (9th Cir. 2014) .....................................................................14

*Deleon v. Verizon Wireless, LLC*
    207 Cal.App.4th 800 (2012) ........................................................................15

*Ferguson v. Countrywide Credit Indus., Inc.*
    298 F.3d 778 (9th Cir. 2002) .......................................................................14

*First Data Merch. Servs. Corp. v. Oxford Mgmt. Servs.*
    2011 U.S. Dist. LEXIS 34183, *15 (E.D.N.Y. 2011) ..................................9

*First Options of Chicago, Inc. v. Kaplan*
    514 U.S. 938 (1995) .....................................................................................16

*Forgeron, Inc. v. Hansen*
    149 Cal.App.2d 352 (1957) ...........................................................................7

*Fredianelli v. Jenkins*
    931 F.Supp.2d 1001 (N.D. Cal. 2013) ..........................................................7

GREENE BROILLET & WHEELER, LLP
P.O. BOX 2131
SANTA MONICA, CA 90407-2131

2:17-cv-05232 JAK (ASx)

Plaintiffs' Opposition to Defendant Phelps' Motion to Compel Arbitration

1D1C.89

*Grove v. Grove Valve & Regulator Co.*
   4 Cal.App.3d 299 (1970) ............................................................. 8

*Healy v. Williams*
   30 A.D.3d 466 (2d Dep't 2006) ................................................ 9

*In re Tobacco Cases I*
   124 Cal.App.4th 1095 (Ct. App. 2004) ................................... 16

*Ixe Banco, S.A. v. MBNA Am. Bank, N.A.*
   2008 U.S. Dist. LEXIS 19806, *24-25 (S.D.N.Y. Mar. 7, 2008.) ............... 9

*John Street Leasehold LLC v. FDIC*
   196 F.3d 379 (2d Cir. 1999) ...................................................... 9

*Kahn Lucas Lancaster v. Lark Int'l.*
   186 F.3d 210 (2d Cir. N.Y. 1999) ............................................. 3

*Kessinger v. Organic Fertilizers, Inc.*
   151 Cal.App.2d 741 (1957) ........................................................ 8

*Knutson v. Sirius XM Radio, Inc.*
   771 F.3d 559 (9th Cir. 2014) ................................................... 14

*Louis Lesser Enterprises, Ltd. v. Roeder*
   209 Cal.App.2d 401 (1962) ....................................................... 8

*Merrill Lynch Interfunding, Inc. v. Argenti*
   155 F.3d 113 (2d Cir. 1998) ..................................................... 9

*Mundi v. Union Sec. Life Ins. Co.*
   555 F.3d 1042 (9th Cir. Cal. 2009) ......................................... 16

*Perez v. DirecTV Group Holdings, LLC*
   (C.D. Cal., May 1, 2017, No. 816CV1440JLSDFMX) 2017 WL
   1836357, at *4–5) ..................................................................... 15

*Prestige Foods v. Whale Sec. Co.*
   243 A.D.2d 281 (1st Dep't 1997) ............................................. 8

*Quevedo v. Macy's, Inc.*
   798 F.Supp.2d 1122 (C.D. Cal. 2011) .................................... 14

*Roth v. Garcia Marquez*
   942 F.2d 617 (9th Cir. 1991) ..................................................... 7

*StarVest Partners II, L.P. v Emportal, Inc.*
   101 A.D.3d 610 (1st Dep't Dec. 27, 2012 ............................. 7, 8

*United Steelworkers of America v. Warrior & Gulf Navigation Co.*
   363 U.S. 574 (1960) ........................................................... 14, 16

*Van Ness Townhouses v. Mar Indus. Corp.*
   862 F.2d 754 (9th Cir. 1988) .................................................. 14

GREENE BROILLET & WHEELER, LLP
P.O. BOX 2131
SANTA MONICA, CA 90407-2131

Plaintiffs' Opposition to Defendant Phelps' Motion to Compel Arbitration

1D1C.89

*Victoria v. Superior Court*
 40 Cal. 3d 734 (Cal. 1985) ............................................................... 16

*Volunteers of Am. of W. N.Y., Inc. v. Rochester Gas & Elec. Corp.*
 2014 U.S. Dist. LEXIS 95547, *42-43 (W.D.N.Y. July 14, 2014).................. 8

*Wagner v. Stratton Oakmont, Inc.*
 83 F.3d 1046 (9th Cir. 1996) ............................................................ 16

*Wheeler v. St. Joseph Hosp.*
 63 Cal.App.3d 345 (Ct. App. 1976) ................................................... 16

<u>Statutes</u>

9 U.S.C. § 202 ...................................................................... 1, 3, 4

9 U.S.C. § 205 ............................................................................... 4

Cal. Civ. Code § 1648 ................................................................... 16

<u>Other Authorities</u>

New York Convention Art. II, § 1 ...................................................... 3

New York Convention art. II, § 2 ..................................................... 3

GREENE BROILLET & WHEELER, LLP
P.O. BOX 2131
SANTA MONICA, CA 90407-2131

Plaintiffs' Opposition to Defendant Phelps' Motion to Compel Arbitration

1D1C.89

TO THE CLERK, UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA, AND TO ALL INTERESTED PARTIES:

Plaintiffs Certain Underwriters at Lloyd's of London (hereinafter Certain Underwriters) oppose Defendant Phelps Dunbar LLP's motion to compel arbitration and motion to stay/dismiss on the following grounds:

1. Defendant Phelps Dunbar LLP (hereinafter "Phelps") has improperly claimed that an agreement exists between Plaintiffs and Defendant that contains an arbitration clause and provisions requiring this matter to be arbitrated in London, England.

2. There is no agreement between Plaintiffs and Defendant Phelps to arbitrate this claim and there is no agreement between Plaintiffs and Phelps that provides this Court with jurisdiction under the New York Convention. The operative agreement between Plaintiffs and Phelps does NOT contain an arbitration clause or any provisions requiring this matter to arbitrated or litigated in the United Kingdom.

3. The arbitration agreement referenced in Phelps' motion comes from a document that was never signed by Plaintiffs and by its own terms never took effect and is unenforceable. It cannot be used to confer jurisdiction or compel arbitration.

4. Furthermore, the arbitration clause relied upon by Phelps has no application to this dispute. The arbitration agreement language is conditional. The arbitration provision only applies in the event that Appendix A to the document did not contain provisions regarding choice of law and jurisdiction. Appendix A to the document contains provisions for choice of law and jurisdiction and does not contain an arbitration clause. Appendix A of the document controls and makes the arbitration language relied upon by Phelps non-operative.

5. Phelps removed this matter to Federal Court solely on the existence of a non-applicable arbitration clause in an agreement that was never signed and never became enforceable. Given that Phelps improperly removed this matter and this Court has no jurisdiction, this Court has no jurisdiction to stay or dismiss this

GREENE BROILLET & WHEELER, LLP
P.O. BOX 2131
SANTA MONICA, CA 90407-2131

1D1C.89

1  matter.   (Plaintiffs have filed a motion to remand, which if granted makes

2  Defendant's instant motion moot.)

3       6.   Defendant's motion improperly seeks to compel arbitration of the entire

4  matter and seeks a dismissal/stay of the entire matter.  The Los Angeles law firm of

5  Lindahl Beck LLP is also a Defendant in this matter. (Hereinafter Lindahl).  There

6  is no agreement to arbitrate between Lindahl and Plaintiffs and this Court cannot

7  compel Plaintiffs' claims against Lindahl to be arbitrated, stayed, and/or dismissed.

8  Furthermore, this Court has no jurisdiction over the state court claims against

9  Lindahl.  If the Court grants Defendant's motion, it should only be with respect to

10 Phelps.  The claims against Lindahl should be remanded back to State Court.

11      This Motion is based on this Notice, the attached Memorandum of Points and

12 Authorities, the attached Declarations of Alan Van Gelder, Anthony Hobkinson,

13 Misha Nateghi, and Stephanie DiChiara and attached exhibits, the pleadings, files

14 and records herein, and upon such other oral and documentary evidence as may be

15 presented at the hearing on the Motion.

16

17 DATED: August 11, 2017          GREENE BROILLET & WHEELER, LLP

18

19                                /s/ Alan Van Gelder
                                  Bruce A. Broillet, Esq.
20                                Scott H. Carr, Esq.
                                  Alan Van Gelder, Esq.
21                                Attorneys for Plaintiff

22

23

24

25

26

27

28

GREENE BROILLET & WHEELER, LLP
P.O. BOX 2131
SANTA MONICA, CA 90407-2131

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION.

Defendant Phelps Dunbar, LLP (hereinafter "Phelps") removed this action to federal court under the "New York Convention" (9 U.S.C. § 202) claiming that this Court has jurisdiction over this legal malpractice action asserting purely state claims solely because there is an arbitration clause in an alleged agreement between Plaintiffs and Phelps.  Phelps brings the instant motion to compel arbitration/stay/dismiss on the same grounds.  As explained below, Phelps is incorrect.  There is no arbitration clause that applies to this litigation and therefore the sole ground for Phelps' motion is inapplicable.  This motion cannot be granted.  Given that there is no enforceable arbitration agreement this Court has no jurisdiction.  Plaintiffs have filed a motion for remand.  This action should therefore be remanded to State Court.

The genesis of this action is a 2012 professional negligence claim against attorney Neil Nydegger and the law firm of Nydegger & Associates (hereinafter referred to as "Nydegger".)  Nydegger was insured under a $1 million professional liability insurance policy underwritten by the Plaintiffs in this action.  Nydegger reported the claim to Plaintiffs in 2012.  (The policy was an eroding/burning limits policy, meaning that the costs of defense come out of the policy.)  Nydegger was sued (the "Nydegger litigation") and Plaintiffs ultimately extended a defense to Nydegger pursuant to the insurance policy. The Los Angeles law firm of Lindahl Beck LLP (hereinafter "Lindahl") served as defense counsel/trial counsel in the Nydegger litigation.  Phelps Dunbar LLP (hereinafter "Phelps"), served as coverage counsel for Plaintiffs in the Nydegger litigation.  Both Phelps and Lindahl owed Nydegger and Plaintiffs a duty to protect Nydegger and Plaintiffs from an excess judgment.  (See Declaration of Alan Van Gelder, Paragraph 3).

Due to the malpractice of Phelps and Lindahl, the Nydegger litigation was not resolved for an amount within the limits of Nydegger's $1 million policy.  The malpractice of Phelps and Lindahl exposed Plaintiffs to an insurance bad faith claim

GREENE BROILLET & WHEELER, LLP
P.O. BOX 2131
SANTA MONICA, CA 90407-2131

1D1C.89

in the event an excess judgment was obtained against Nydegger. (Van Gelder Declaration, Paragraph 3.)

In September of 2016 a San Diego jury found Nydegger liable for $45 million in damages. Due to the malpractice of Phelps and Lindahl, Plaintiffs faced exposure for the full amount of the jury's verdict. Plaintiffs subsequently resolved the Nydegger litigation for an amount well in excess of the original $1 million policy limits. Plaintiffs then filed a professional negligence claim against Lindahl and Phelps in the Superior Court of the State of California, County of Los Angeles for the damages caused by the malpractice of both law firms. (Van Gelder Declaration, Paragraph 3).

Phelps' motion is based on the claim that there is an agreement to arbitrate this dispute between Plaintiffs and Phelps. Phelps' motion is improper for two reasons. Plaintiffs and Phelps have NEVER agreed to arbitrate this dispute. Phelps' motion is based on an arbitration clause contained within a document that Plaintiffs never signed and therefore never became operative by its own express terms. Furthermore, the document relied upon by Phelps does not allow for this matter to be arbitrated even if it had been signed because, by its express terms, that agreement does not apply to the relationship between Phelps and the Plaintiffs. In short, the sole basis for Phelps' motion, like its removal, was invalid. Phelps motion should be denied and this action should be remanded to State Court.

## II.   REQUIREMENTS UNDER THE NEW YORK CONVENTION.

The sole basis for Phelps' motion is the New York Convention. In determining whether a party has entered into an agreement with an arbitration provision that is subject to the New York Convention the Court begins the first step of its inquiry by resolving the following four preliminary questions: (i) Is there an agreement in writing to arbitrate the subject of the dispute? (ii) Does the agreement provide for arbitration in the territory of a signatory of the Convention? (iii) Does the agreement arise out of a legal relationship, whether contractual or not, which is

Plaintiffs' Opposition to Defendant Phelps' Motion to Compel Arbitration

GREENE BROILLET & WHEELER, LLP
P.O. BOX 2131
SANTA MONICA, CA 90407-2131

considered as commercial? and (iv) Is a party to the agreement not an American citizen, or does the commercial relationship have some reasonable relation with one or more foreign states? *Chloe Z Fishing Co. v. Odyssey Re (London) Ltd.,* 109 F.Supp.2d 1236, 1243 (S.D. Cal. 2000).

The New York Convention provides that "each Contracting State shall recognize an agreement in writing under which the parties undertake to submit to arbitration all or any differences which have arisen or which may arise between them . . . concerning a subject matter capable of settlement by arbitration." New York Convention Art. II, § 1.  The Convention goes on to define **"agreement in writing"** to include "an arbitral clause in a contract or an arbitration agreement, signed by the parties or contained in an exchange of letters or telegrams." New York Convention art. II, § 2.  (Emphasis added).  See also *Kahn Lucas Lancaster v. Lark Int'l.,* 186 F.3d 210, 214 (2d Cir. N.Y. 1999).

The term "agreement in writing" in the New York Convention is defined solely by Article II, Section 2 of the New York Convention.  It is not given any broadened scope by the Federal Arbitration Act, including 9 U.S.C. § 202.  *Chloe Z Fishing Co.* supra, at 1244-46.

Phelps' motion fails to answer the first question under the New York Convention.  Phelps has failed to show that there is an agreement in writing to arbitrate this matter.[1]

---

[1] Given that Phelps has failed to satisfy the first question of the New York Convention, it is not necessary for Plaintiffs to address the remaining questions.  Plaintiffs do not admit that that Phelps has satisfied the remaining questions necessary for jurisdiction under the New York Convention and reserve the right to dispute whether Phelps has satisfied the remaining questions.

GREENE BROILLET & WHEELER, LLP
P.O. BOX 2131
SANTA MONICA, CA 90407-2131

III.   **THERE IS NO AGREEMENT BETWEEN PHELPS AND PLAINTIFF TO ARBITRATE THIS MATTER.**

On July 14, 2017 Defendant Phelps removed the matter to Federal Court.  The sole basis for the removal was the allegation that a contract existed between Plaintiffs and Phelps that included an arbitration provision.  Phelps claimed that the arbitration provision placed this litigation under the New York Convention pursuant to 9 U.S.C. § 202 and 9 U.S.C. § 205.

In its notice of removal Phelps did not attach the alleged agreement it contended conferred federal subject matter jurisdiction over this dispute.  The notice also did not indicate when the alleged agreement containing the arbitration provision clause was entered into between Phelps and Plaintiffs.

On July 21, 2017 Phelps filed a motion to compel arbitration/motion to dismiss.  Phelps' motion relies on the Declaration of Phelps partner Marshal Redmon.  In his declaration Mr. Redmon claims that Plaintiffs and Phelps entered into an agreement that contains a clause requiring this matter to be arbitrated in London England.  Mr. Redmon attaches as Exhibit 1 to his declaration an undated document referred to as the Terms of Service.  (Hereinafter referred to as the "TOS").  The sole basis for the motion to compel arbitration, like Phelps' removal, is Paragraph 30 of the TOS.

As explained below, it was improper for Phelps to remove this matter or bring this motion based on the TOS.  The TOS never became the operative agreement between the parties and is not an enforceable agreement.  The actual operative agreement between the parties is the 2012 Service Level Agreement (hereinafter the 2012 SLA).  (*See* the Declaration of Anthony Hobkinson which is attached as Exhibit 1 to the Declaration of Alan Van Gelder and the Declaration of Stephanie DiChiara attached to this motion).  The 2012 SLA contains no arbitration clause and prevents Phelps from relying on the TOS to compel arbitration.

1D1C.89

## A. The 2012 SLA is the Operative Agreement Between the Parties and Prevents Phelps from Compelling Arbitration.

Attached as Exhibit 1 to the Declaration of Alan Van Gelder is the Declaration of  Anthony Hobkinson filed in support of Plaintiffs' Motion for Remand.  In addition, attached to this Opposition is the Declaration of Stephanie DiChiara.  Mr. Hobkinson is the head of group claims for Certain Underwriters. Certain Underwriters contracts with third parties, such as Phelps, to provide legal advice/services in connection with the handling of certain insurance claims.  These contracts are sometimes referred to as Service Level Agreements ("SLA").  Ms. DiChiara works with Mr. Hobkinson and was also responsible for accessing the files containing the SLA between Plaintiffs and Phelps.

As set out in the Declarations of Mr. Hobkinson and Ms. DiChiara, in March of 2012 Plaintiffs and Phelps entered into the 2012 SLA.  Relevant portions of the 2012 SLA are attached as Exhibit 1 to the Declaration of Ms. DiChiara.  Significant to this motion are the following provisions:

**Paragraph 40:  Term of this Agreement:  The term of this Agreement commences when executed by both parties.**

**Paragraph 41:  Law and Jurisdiction and resolution of any dispute:  This Agreement (and any dispute hereunder) shall be governed by and construed in accordance with the laws of New York.**

**Any controversy or claim arising out of or relating to this Agreement, or breach thereof, shall be settled by non-binding Mediation to be held in County of New York by a mutually agreed upon mediator.  If the parties unable to agree on a mediator within 30 days of a written request to mediate, then the dispute shall be referred to JAMS or a similar entity agreed by The Firm and Beazley.  If an impasse is reached by the mediator, The Firm agrees to refrain from any legal action for 90 days thereafter.**

**Paragraph 44:  Modification of the Agreement.  Unless expressly provided for in the Agreement or the appendices hereto, no provision of the Agreement may be amended, waived, or discharged except by agreement in writing signed by each party hereto.** (Emphasis added.)[2]

---

[2] The 2012 SLA (including all of its appendices) is approximately 67 pages long.  The agreement is a confidential document.  Given that the vast majority of the information contained within the 2012 SLA is not relevant to this motion Plaintiffs are only attaching the portions of the 2012 SLA to this motion.  (The provisions cited in this motion do not contain sensitive (continued...)

GREENE BROILLET & WHEELER, LLP
P.O. BOX 2131
SANTA MONICA, CA 90407-2131

1D1C.89

GREENE BROILLET & WHEELER, LLP
P.O. BOX 2131
SANTA MONICA, CA 90407-2131

1    Under the express provisions of Paragraph 40 of the 2012 SLA, the agreement

2    became operative when it was signed by <u>both</u> Plaintiffs and Phelps.  As set out in his

3    declaration, Mr. Hobkinson is the person who would review and execute agreements

4    with third-party service providers such as Phelps Dunbar.  Mr. Hobkinson signed the

5    2012 SLA and Phelps signed the 2012 SLA.

6    Phelps began their work for the Plaintiffs on the Nydegger matter in October

7    2012.  (*See* Declaration of Van Gelder, Paragraph 3(j)).  It cannot be disputed that as

8    of October 2012 the 2012 SLA was the operative agreement between Plaintiffs and

9    Phelps.

10    As set out in the Declarations of Mr. Hobkinson and Ms. DiChiara, the 2012

11    SLA and not the TOS has always been and continues to be the operative agreement

12    between Plaintiffs and Phelps.  The express terms of the 2012 SLA do not permit

13    Phelps to force Plaintiffs to arbitrate their claims.

14    Under the express terms of Paragraph 44 of the 2012 SLA, Phelps cannot

15    compel this matter into arbitration without producing an "agreement in writing

16    signed by each party" agreeing to arbitration.[3]  Phelps has never produced such a

17    document.

18    The TOS does not qualify as a modification because it was never actually

19    signed by the Plaintiffs.  (*See* Declarations of Mr. Hobkinson, Ms. DiChiara, and

20    Ms. Misha Nateghi.  Ms. Nateghi's Declaration is attached as Exhibit 2 to the

21    Declaration of Alan Van Gelder).  As such, in the absence of an agreement to

22    arbitrate that was signed by both Plaintiffs and Phelps, the 2012 SLA prevents

23    Phelps from compelling this matter to arbitration.

24    (...continued)

25    confidential information).  The 2012 SLA does not contain any arbitration provisions governing
      this dispute.  (*See* Declarations of Alan Van Gelder, Paragraph 6 and Stephanie DiChiara,

26    Paragraph 9).  In the event it becomes necessary to submit the entire 2012 SLA to the Court,
      Plaintiffs can do so under seal.  On August 10, 2017 Plaintiffs' Counsel provided Defense

27    Counsel a copy of the entire signed 2012 SLA.  (Declaration of Van Gelder at Paragraph 7).
      [3] The requirement that an agreement cannot be modified without an agreement signed by both

28    parties also appears in Paragraph 34 of the TOS.

Plaintiffs' Opposition to Defendant Phelps' Motion to Compel Arbitration

1D1C.89

**B.  By Its Express Terms, the TOS is Not Operative or Effective Without the Signature of Plaintiffs.**

Another reason why the TOS does not justify removal is that it never became the operative agreement between the parties.  Paragraph 29 of the TOS provides that the agreement only "commences when executed by both parties."  Plaintiffs never signed the TOS.  As such its alleged arbitration provision never became operative, effective, or binding.

By signing the TOS, Phelps expressly agreed that the TOS would not and could not become binding without the signature of Plaintiffs.  Even if the TOS contained a valid arbitration clause, (which, as discussed below, it does not), the arbitration clause cannot be enforced because the Plaintiffs never signed the TOS.[4]

Since it is clear that the proposed written contract would become operative only when signed by the parties and that both parties contemplated that acceptance of the contract's terms would be signified by signing it, the failure to sign the agreement means no binding contract was created. (*Beck v. American Health Group Int'l., Inc.*, 211 Cal.App.3d 1555, 1562 (1989), and cases cited there; *Forgeron, Inc. v. Hansen*, 149 Cal.App.2d 352, 360 (1957); *Banner Entertainment, Inc. v. Superior Court*, 62 Cal.App.4th 348, 358 (1998); *Roth v. Garcia Marquez*, 942 F.2d 617, 626-627 (9th Cir. 1991), *Fredianelli v. Jenkins*, 931 F.Supp.2d 1001, 1016 (N.D. Cal. 2013).   This is so even though the party later sought to be bound by the agreement indicated a willingness to sign the agreement. (*Forgeron, Inc. v. Hansen, supra*, at 360.)

The result is the same in the Courts of New York.  See *StarVest Partners II, L.P. v Emportal, Inc.*, 101 A.D.3d 610, 613, 957 N.Y.S.2d 93 (1st Dep't Dec. 27, 2012), *Amcan Holdings, Inc. v Canadian Imperial Bank of Commerce*, 70 A.D.3d

---

[4] The requirement that both parties sign a service level agreement is not new to the relationship between Plaintiffs and Phelps.  The same language requiring the signatures of both parties is found in Paragraph 40 of the 2012 SLA.

GREENE BROILLET & WHEELER, LLP
P.O. BOX 2131
SANTA MONICA, CA 90407-2131

Plaintiffs' Opposition to Defendant Phelps' Motion to Compel Arbitration

1D1C.89

423, 426-427, 894 N.Y.S.2d 47 (1st Dep't 2010).  As explained in *Volunteers of Am. of W. N.Y., Inc. v. Rochester Gas & Elec. Corp.,* 2014 U.S. Dist. LEXIS 95547, *42-43 (W.D.N.Y. July 14, 2014):

> Moreover, the MOU provided that it could not be amended in the absence of a writing signed by counsel for both parties. Because the MOU stated that the parties would have to enter into a new MOU if they agreed upon remediation, and because, under the MOU, the parties contemplated being bound only by written agreements signed by both counsel, it was unreasonable for VOA to rely on promises allegedly made elsewhere. See *StarVest Partners II, L.P. v. Emportal, Inc.* 101 A.D.3d 610, 613, 957 N.Y.S.2d 93 (1st Dep't 2012) ("Where a term sheet or other preliminary agreement explicitly requires the execution of a further written agreement before any party is contractually bound, it is unreasonable as a matter of law for a party to rely upon the other party's promises to proceed with the transaction in the absence of that further written agreement[.]") (citing, inter alia, *Prestige Foods v. Whale Sec. Co.,* 243 A.D.2d 281, 663 N.Y.S.2d 14 (1st Dep't 1997) (dismissing promissory estoppel, fraud and negligent misrepresentation counts because plaintiffs' claim of reasonable reliance was "flatly contradicted" by the letter agreements stating that neither party had any legal obligations until both had executed an underwriting agreement)).

"It is essential to the existence of every contract that there should be a reciprocal assent to a definite proposition, and when the parties to a proposed contract have themselves fixed the manner in which their assent is to be manifested, an assent thereto, in any other or different mode, will not be presumed." … Thus, the failure to reach a meeting of the minds on all material points prevents the formation of a contract even though the parties have orally agreed upon some of the terms, or have taken some action related to the contract. (*Banner Entertainment, Inc., supra,* at 358-359; *Grove v. Grove Valve & Regulator Co.,* 4 Cal.App.3d 299, 311-312 (1970); *Louis Lesser Enterprises, Ltd. v. Roeder,* 209 Cal.App.2d 401 (1962); *Apablasa v. Merritt & Co.,* 176 Cal.App.2d 719 (1959); *Kessinger v. Organic Fertilizers, Inc.,* 151 Cal.App.2d 741 (1957)).

By the express terms of both the 2012 SLA and the TOS, Phelps agreed that the terms of the 2012 SLA could not be modified by the TOS unless the TOS was signed by both parties.  In this case Phelps agreed that in order for the TOS to become operative and potentially modify the terms of the 2012 SLA, both parties

GREENE BROILLET & WHEELER, LLP
P.O. BOX 2131
SANTA MONICA, CA 90407-2131

1  had to sign the TOS.  Without a fully signed TOS, Phelps has no right to complain

2  that the TOS was not enforceable.

3      Any claim by Phelps that, even though Plaintiffs never signed the TOS, the

4  Court should use Phelps' continued representation of Plaintiffs after April 22, 2016

5  to imply that the TOS is now the operative agreement, also fails.

6      A clause prohibiting modification absent a writing signed by the parties is

7  afforded "great deference" by New York courts.  *John Street Leasehold LLC v.*

8  *FDIC,* 196 F.3d 379, 382 (2d Cir. 1999); *First Data Merch. Servs. Corp. v. Oxford*

9  *Mgmt. Servs.,* 2011 U.S. Dist. LEXIS 34183, *15 (E.D.N.Y. 2011); *Calica v*

10  *Reisman, Peirez, & Reisman,* 296 A.D.2d 367, 744 N.Y.S.2d 495 (2d Dep't 2002);

11  *Healy v. Williams,* 30 A.D.3d 466, 467, 818 N.Y.S.2d 121, 123 (2d Dep't 2006); *Ixe*

12  *Banco, S.A. v. MBNA Am. Bank, N.A.,* 2008 U.S. Dist. LEXIS 19806, *24-25

13  (S.D.N.Y. 2008.)

14      Under New York law the party seeking enforcement of an alleged

15  modification that runs contrary to a requirement that the modification be signed by

16  both parties has a high burden to overcome.  The party urging enforcement of an

17  unsigned modification must show that: (1) one party has partially performed under

18  the terms of the modification; (2) that party's partial performance is "unequivocally

19  referable" to the modification; and (3) this conduct conferred a benefit on the party

20  opposing enforcement.  *First Data Merch. Servs. Corp., supra,* at 15-16*; Merrill*

21  *Lynch Interfunding, Inc. v. Argenti,* 155 F.3d 113, 121 (2d Cir. 1998); *Club Haven*

22  *Inv. Co., LLC v. Capital Co. of Am, LLC,* 160 F.Supp.2d 590, 592 (S.D.N.Y. 2001).

23  To be "unequivocally referable," "the action taken must be unintelligible or at least

24  extraordinary, explainable only with reference to the oral argument." *First Data*

25  *Merch Services, supra,* at 15-16; *Merrill Lynch, supra,* at 122.

26      As set out in the Declaration of Marshall Redmon in support of Phelps'

27  motion for arbitration, he received and signed the TOS in April of 2016.  As such, it

28  cannot be disputed that Phelps had already been representing Plaintiffs in

GREENE BROILLET & WHEELER, LLP
P.O. BOX 2131
SANTA MONICA, CA 90407-2131

- 9 -                    2:17-cv-05232 JAK (ASx)

1D1C.89

1    connection with the Nydegger matter under the 2012 SLA for over **three and a half**

2    **years,** a time period in which Plaintiffs contend that Phelps had already committed

3    malpractice. (*See* Declaration of Van Gelder, Paragraph 3.)

4         This is thus not a case where Plaintiffs' decision not to sign the TOS left

5    Phelps and Plaintiffs with no operative agreement. Plaintiffs' failure to sign the

6    TOS simply meant that the status quo that had been put in place by the 2012 SLA

7    remained unchanged.

8         Further, Phelps and Plaintiffs never performed under the terms of the alleged

9    modification. As set out in Paragraph 10 of the Declaration of Ms. Nateghi,

10   Plaintiffs and Phelps never arbitrated any disputes in the United Kingdom. The fact

11   that Phelps continued work on the Nydegger matter after April 2016 is not

12   necessarily related to the alleged arbitration provision or the TOS, since as just

13   explained, Phelps had already been working on the Nydegger matter pursuant to the

14   2012 SLA. Nor is there any evidence that Phelps altered its conduct or suffered

15   some detriment during the Nydegger case as a result of the arbitration provision of

16   the TOS to the benefit of Plaintiffs.

17        **C.   Plaintiffs Did Not Sign or Agree to be Bound by the TOS.**

18        As set out in the Declarations of Mr. Hobkinson and Ms. Nateghi filed in

19   support of Plaintiffs' Motion for Remand, (Exhibits 1 and 2 to the Declaration of

20   Van Gelder), Mr. Hobkinson was the person who would review and execute

21   agreements with third-party service providers such as Phelps Dunbar. As explained

22   by Ms. DiChiara and Mr. Hobkinson the 2012 SLA was the last mutually signed,

23   operative, and binding service agreement between Plaintiffs and Phelps prior to the

24   filing of this lawsuit. As stated in the Declarations of Mr. Hobkinson, Misha

25   Nateghi, and Stephanie DiChiara, the 2012 SLA is and was the operative agreement

26   at all times during the Nydegger litigation.

27        The evidence Phelps has submitted in support of its motion to compel

28   arbitration does not establish that the TOS was effective, although unsigned by

GREENE BROILLET & WHEELER, LLP
P.O. BOX 2131
SANTA MONICA, CA 90407-2131

1D1C.89

1  Plaintiffs.  In the Declaration of Marshall Redmon, he asserts that on April 21, 2016
2  – well after most of the significant conduct that forms the basis for Plaintiffs' claims
3  in this action, he received the TOS from Ms. Nateghi.  According to Mr. Redmon,
4  the TOS arrived via an email from Misha Nateghi.  Ms. Nateghi purportedly wrote,
5  "As promised please see attached a revised Standard Level Agreement for your
6  comments/sign off."  The email continued, "If you would like to discuss any of the
7  provisions please do let me know."  (The email chain between Mr. Redmon and Ms.
8  Nateghi is also attached as Exhibit 2 to the Redmon Declaration).

9      Significantly, the April 21st email did not state that the TOS was the final
10  agreement. The email did not state that the TOS would become effective and
11  binding once it was signed by Mr. Redmon.  Rather, the email invited Mr. Redmon
12  to review the TOS and discuss any questions he may have about the TOS.

13      On April 22nd Mr. Redmon responded to Ms. Nateghi's email by attaching
14  one page of the TOS with his signature.  In the same email forwarding his signature
15  Mr. Redmon requested that Ms. Nateghi "send a copy of Beazley's page for our
16  records please."

17      Of course, if Mr. Redmon's signature was the only signature necessary for the
18  TOS to become effective, there would have been no need for Mr. Redmon to request
19  a signature page from Ms. Nateghi.  Mr. Redmon's request for a fully executed copy
20  of the TOS was not surprising as he was a partner at a large law firm who was
21  responsible for reviewing the TOS.  In view of the express language of Paragraph 29
22  of the TOS requiring the signature of both parties, Mr. Redmon would have wanted
23  to ensure that it was signed by Plaintiffs.

24      Further, the evidence is clear that no one with authority to bind Plaintiffs
25  approved of the TOS.   Misha Nateghi was one of the claim's managers for
26  Plaintiffs.   In her declaration in support of Plaintiffs' Motion for Remand she
27  explains that in 2016 Plaintiffs wanted to revise the language of the service
28  agreement between Phelps and Plaintiffs. Ms. Nateghi's department helped prepare

GREENE BROILLET & WHEELER, LLP
P.O. BOX 2131
SANTA MONICA, CA 90407-2131

- 11 -

language for the approval of both Phelps and Plaintiffs.  The revised language is what ultimately became the TOS on which Phelps now relies.  Ms. Nateghi had no authority to sign the TOS on behalf of Plaintiffs.  Instead, it was understood that the any agreement with Phelps would be submitted to Mr. Hobkinson for his review, and upon his approval and execution of the agreement would bind Plaintiffs to terms of the TOS.

Before sending the TOS to Mr. Hobkinson for his approval on behalf of the Plaintiffs, Ms. Nateghi sought to ensure that Phelps would be agreeable to the revised language contained in the TOS.  Ms. Nateghi thus sent the TOS to Mr. Redmon for his approval of the language and signature before she would submit the TOS to Mr. Hobkinson for his review.  If Mr. Hobkinson approved of the language contained in the TOS, he would then sign the TOS on behalf of Plaintiffs and the agreement would then (and only then) become effective.

Ms. Nateghi makes clear that she lacked the power to bind Plaintiffs as to the TOS.  Nor did Ms. Nateghi tell anyone at Phelps that Plaintiffs had signed the TOS.  Ms. Nateghi further declares that she understood that the TOS was *not* enforceable between Phelps and Plaintiffs without Mr. Hobkinson's signature on the TOS.  If Ms. Nateghi felt that that the TOS became binding the moment Mr. Redmon signed the TOS she never would have needed to submit the TOS to Mr. Hobkinson for his review, approval, and signature.

After Mr. Redmon signed the TOS, Ms. Nateghi sent the TOS to Stephanie DiChiara.  Ms. DiChiara was to provide the TOS to Mr. Hobkinson for his review and if he approved, his signature.  According Ms. DiChiara, she presented the TOS to Mr. Hobkinson for review and signature.  According to both Ms. DiChiara and Mr. Hobkinson, the TOS was not signed by Mr. Hobkinson.

In short, the TOS never became the operative and effective agreement between Plaintiffs and Phelps.  Accordingly, the alleged arbitration provision

GREENE BROILLET & WHEELER, LLP
P.O. BOX 2131
SANTA MONICA, CA 90407-2131

1D1C.89

1  contained in the TOS does not provide any basis to compel Plaintiffs to arbitrate

2  their claims against Phelps.

3  **IV.**  **PARAGRAPH 30 OF THE TOS DOES NOT PROVIDE A BASIS FOR**

4  **PHELPS TO COMPEL ARBITRATION.**

5       This Court cannot compel Plaintiffs to arbitrate their claims because the TOS

6  is not the operative agreement between Plaintiffs and Phelps.  As discussed above

7  the TOS was never signed by Plaintiffs and is NOT the operative agreement

8  between Plaintiffs and Phelps.  Furthermore, the express terms of the fully executed

9  2012 SLA prevent Phelps from using any language within the TOS to compel

10  Plaintiffs to arbitrate their claims or litigate their claims outside their chosen forum

11  of the State of California.  The provisions of the TOS have absolutely no impact on

12  Plaintiffs' claims against Phelps.

13       This Court also cannot compel arbitration because there is no language

14  contained within the TOS that is capable of compelling Plaintiffs to arbitrate their

15  claims against Phelps.  The sole basis for Phelps' motion was its reliance on

16  Paragraph 30 of the TOS.  However, Paragraph 30 of the TOS does not have an

17  effective arbitration provision.

18       Paragraph 30 of the TOS provides:

19      **Dispute Resolution:**  The parties are free to choose the law and jurisdiction
that applies to this agreement which shall be recorded in appendix A.  **In the**

20  **absence of any choice having been recorded in Appendix A** any dispute or
differences arising out of or relating to this Agreement will be subject to the

21  laws of England and Wales **and** shall be submitted to the decision of a single
arbitrator before the LCIA.  The arbitration proceedings shall take place in

22  London, England and shall be conducted in the English language. (Emphasis
added).

23

24       While Phelps relies heavily on Paragraph 30, Phelps glosses over the

25  existence of the provisions in "Appendix A" of the TOS.  Appendix A of the TOS is

26  key to determining the effect of the above Dispute Resolution provision since by its

27  express terms that provision is effective only if there is no applicable provision in

28  Appendix A.  Here, Appendix A contains the following provisions:

GREENE BROILLET & WHEELER, LLP
P.O. BOX 2131
SANTA MONICA, CA 90407-2131

1D1C.89

| Choice of Law | England and Wales |
|---------------|-------------------|
| Jurisdiction | England and Wales |

Since Appendix A has this choice of law and choice of jurisdiction provision, a "choice" has been "recorded" and therefore under its express terms the remaining provisions of Paragraph 30, including the arbitration provision, has no application. Essentially, the arbitration language in Paragraph 30 is no different than a warning that says, "In case of fire, break glass." If there is no fire there is no need, let alone permission, to break the glass.

If Plaintiffs and Phelps had intended the TOS to also include an arbitration provision, then the TOS would have added such an arbitration provision to Appendix A – just as they did with respect to the choice of law and jurisdiction provisions.

"The threshold issue in deciding a motion to compel arbitration is 'whether the parties agreed to arbitrate.' " *Quevedo v. Macy's, Inc.,* 798 F.Supp.2d 1122, 1133 (C.D. Cal. 2011) (quoting *Van Ness Townhouses v. Mar Indus. Corp.,* 862 F.2d 754, 756 (9th Cir. 1988)). "[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Knutson v. Sirius XM Radio, Inc.,* 771 F.3d 559, 565 (9th Cir. 2014) (alteration in original) (quoting *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574 (1960), 80 S.Ct. 1347). "When determining whether a valid contract to arbitrate exists, we apply ordinary state law principles that govern contract formation." *Davis v. Nordstrom, Inc.,* 755 F.3d 1089, 1093 (9th Cir. 2014) (citing *Ferguson v. Countrywide Credit Indus., Inc.,* 298 F.3d 778, 782 (9th Cir. 2002)).

"It is undisputed that under California law, mutual assent is a required element of contract formation." *Knutson, supra,* at 565. The mutual assent necessary to form a contract "is determined under an objective standard applied to the outward manifestations or expressions of the parties, i.e., the reasonable

GREENE BROILLET & WHEELER, LLP
P.O. BOX 2131
SANTA MONICA, CA 90407-2131

- 14 -

1  meaning of their words and acts, and not their unexpressed intentions or
2  understandings." *Deleon v. Verizon Wireless, LLC,* 207 Cal.App.4th 800, 813, 143
3  Cal.Rptr.3d 810 (2012) (citation and internal quotation marks omitted); see also
4  *Perez v. DirecTV Group Holdings, LLC,* (C.D. Cal., May 1, 2017, No.
5  816CV1440JLSDFMX) 2017 WL 1836357, at *4–5).

6       Phelps seeks to compel arbitration based on a provision contained within
7  Paragraph 30 of the TOS that only applies in the event Appendix A is silent on the
8  issues of law and jurisdiction.   Appendix A contains answers on the questions of
9  choice of law and jurisdiction.   As such, Phelps can only move to compel arbitration
10  and remove this matter to Federal Court under the New York Convention if there is
11  an arbitration clause in Appendix A.   No such clause exists in Appendix A so there
12  is no basis for arbitration and no basis for removal to Federal Court.[5]

13  ## V.   THIS COURT CANNOT GRANT PHELPS' REQUEST TO COMPEL
14  ## ARBITRATION AND REQUEST FOR STAY/DISMISSAL

15       Given that the TOS is not a valid and enforceable agreement to arbitrate the
16  dispute between Plaintiffs and Phelps, this Court has no jurisdiction and cannot
17  grant Phelps' motion.   However, even if the Court were to conclude that Plaintiffs
18  should be compelled to arbitrate their claims against Phelps, the Court still cannot
19  dismiss/stay this matter in its entirety.

20       Lindahl is also a Defendant in this matter.   Lindahl is not a party to the TOS
21  and is not a signatory to the TOS.   There is no arbitration agreement between
22  Lindahl and Plaintiffs and the alleged arbitration provision of the TOS does not
23  cover Plaintiffs' claims against Lindahl.   Even the Court grants Phelps motion to
24

25       [5] Again, Plaintiffs dispute any claim that the TOS is the operative agreement between the
26  parties and that any provisions contained within the TOS have any effect on Plaintiffs' claims
     against Phelps.   Plaintiffs make this argument only to show that Phelps never had any basis to
27  remove this matter to Federal Court or compel arbitration.   Nothing in this motion should be
     construed as an agreement by Plaintiffs that this matter should be litigated in the Courts of the
28  United Kingdom under the laws of England and Wales.

GREENE BROILLET & WHEELER, LLP
P.O. BOX 2131
SANTA MONICA, CA 90407-2131

1D1C.89

1   compel arbitration, at best the Court can only potentially compel Plaintiffs to

2   arbitrate their claims against Phelps.

3          As the Ninth Circuit explained in *Mundi v. Union Sec. Life Ins. Co.,* 555 F.3d

4   1042, 1044-1045 (9th Cir. Cal. 2009):

> "In determining whether parties have agreed to arbitrate a dispute, we apply "general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration." *Wagner v. Stratton Oakmont, Inc.,* 83 F.3d 1046, 1049 (9th Cir. 1996); *see also First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed. 2d 985 (1995) ("When deciding whether the parties agreed to arbitrate a certain matter . . . , courts generally . . . should apply ordinary state-law principles that govern the formation of contracts.").   The presumption in favor of arbitration, however, does not apply "if contractual   language is plain that arbitration of a particular controversy is not within the scope of the arbitration provision." *In re Tobacco Cases I,* JCCP 4041, 124 Cal.App.4th 1095, 21 Cal.Rptr.3d 875, 887 (Ct. App. 2004); *see also AT&T Technologies, Inc. v. Communications Workers of America,* 475 U.S. 643, 648, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986) (" '[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" (quoting *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed. 2d 1409 (1960))); *Victoria v. Superior Court,* 40 Cal. 3d 734, 222 Cal.Rptr. 1, 710 P.2d 833, 834 (Cal. 1985) (en banc) (stating that "'the policy favoring arbitration cannot displace the necessity for a voluntary agreement to arbitrate' " (quoting *Wheeler v. St. Joseph Hosp.,* 63 Cal.App.3d 345, 133 Cal.Rptr. 775, 783 (Ct. App. 1976))); *Crowley Mar. Corp. v. Boston Old Colony Ins. Co.,* 158 Cal.App.4th 1061, 70 Cal.Rptr. 3d 605, 611 (Ct. App. 2008) ("The public policy favoring arbitration does not apply to disputes the parties have not agreed to arbitrate."). "In addition, '[h]owever broad may be the terms of a contract, it extends only to those things concerning which it appears that the parties  intended to contract.'" *Victoria, supra,* at 834 (quoting Cal. Civ. Code § 1648) (alterations in original)."

22          There is nothing about the language in the alleged arbitration clause in the

23   TOS that extends the agreement to cover the conduct of Lindahl.   The agreement

24   cannot be used or extended to cover Plaintiffs' claims against Lindahl.

## VI.   **CONCLUSION.**

26          The TOS was not signed by Plaintiffs.  The TOS by its own terms states that

27   it cannot take effect or be binding on Plaintiffs unless both sides sign the agreement.

28   The 2012 SLA prevents the TOS from modifying the 2012 SLA without signatures

GREENE BROILLET & WHEELER, LLP
P.O. BOX 2131
SANTA MONICA, CA 90407-2131

1D1C.89

1  of both Plaintiffs and Phelps.  The intent of the parties is clear.  The TOS and its

2  alleged arbitration provision are not binding and enforceable without the signature

3  of Plaintiffs.  The alleged arbitration provision in the TOS does not provide this

4  Court jurisdiction or the ability to compel arbitration because it never took effect

5  and is not binding on Plaintiffs.  The operative agreement between Plaintiffs and

6  Phelps is the 2012 SLA.  Given that the 2012 SLA has no provision that falls under

7  the New York Convention, there is no subject matter jurisdiction and Phelps'

8  motion to compel arbitration fails.

9       The arbitration provision in Paragraph 30 of the TOS only takes effect if there

10 is no choice of law/jurisdiction selection in Appendix A.  The TOS has both

11 selections made in Appendix A.  As such Paragraph 30 cannot be used to compel

12 arbitration.

13      Phelps' motion should be denied.  This matter should be remanded back to

14 State Court.

15

16 DATED: August 11, 2017          GREENE BROILLET & WHEELER, LLP

17

18                                /s/ Alan Van Gelder
19                                Bruce A. Broillet, Esq.
                                  Scott H. Carr, Esq.
20                                Alan Van Gelder, Esq.
                                  Attorneys for Plaintiff

21

22

23

24

25

26

27

28

GREENE BROILLET & WHEELER, LLP
P.O. BOX 2131
SANTA MONICA, CA 90407-2131

1D1C.89

Plaintiffs' Opposition to Defendant Phelps' Motion to Compel Arbitration

1

## **CERTIFICATE OF SERVICE**

2

3    I hereby certify that on August 10, 2017, I filed the foregoing document

4  entitled PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO

5  COPMPEL ARBITRATION; MEMORANDUM OF POINTS AND

6  AUTHORITIES; DECLARATIONS OF ALAN VAN GELDER, ANTHONY

7  HOBKINSON, MISHA NATEGHI, STEPHANIE DICHIARA, and EXHIBITS

8  with the Clerk of the Court using the CM/ECF system, which will send a notice of

9  electronic filing to all counsel of record in this action.

10

11

12                                             /s/ Alan Van Gelder
                                               Alan Van Gelder, Esq.
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GREENE BROILLET & WHEELER, LLP
P.O. BOX 2131
SANTA MONICA, CA 90407-2131

1D1C.89

- 1 -                                2:17-cv-05232 JAK (ASx)

Plaintiffs' Opposition to Defendant Phelps' Motion to Compel Arbitration