GREENE BROILLET & WHEELER, LLP
LAWYERS
100 WILSHIRE BOULEVARD, SUITE 2100
P.O. BOX 2131
SANTA MONICA, CALIFORNIA 90407-2131
TEL. (310) 576-1200
FAX. (310) 576-1220

(SPACE BELOW FOR FILING STAMP ONLY)

BRUCE A. BROILLET, State Bar No. 63910
*bbroillet@gbw.law*
SCOTT H. CARR, State Bar No. 156664
*scarr@gbw.law*
ALAN VAN GELDER, State Bar No. 221820
*avangelder@gbw.law*

Attorneys for ___Plaintiff___

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, <br><br> Plaintiff, <br><br> vs. <br><br> PHELPS DUNBAR, LLP; LINDAHL BECK, LLP; and DOES 1-10, inclusive, <br><br> Defendants. | CASE NO. 2:17-cv-05232 JAK (ASx) <br><br> (Los Angeles Superior Court Case No. BC662052) <br><br> **PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR REMAND; MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> **[Declarations of Alan Van Gelder, Anthony Hobkinson, Misha Nateghi, Stephanie DiChiara, and Exhibits Concurrently Filed Herewith]** <br><br> Date  :   November 6, 2017 <br> Time  :   8:30 a.m. <br> Dept. :   10B <br><br> [Assigned for All Purposes to: Hon. John A. Kronstadt, Courtroom 10B] |

1D1C.86

# **TABLE OF CONTENTS**

Page

I.     INTRODUCTION. ....................................................................... 1

II.    STANDARD OF LAW. ................................................................ 2

III.   REQUIREMENTS UNDER THE NEW YORK CONVENTION. .................. 3

IV.    THERE IS NO AGREEMENT BETWEEN PHELPS AND
       PLAINTIFFS TO ARBITRATE THIS MATTER. ............................. 4

       A.   The 2012 SLA is the Operative Agreement Between the Parties and
            Prevents Phelps from Removing This Matter. ............................. 5

       B.   By Its Express Terms, the TOS is Not Operative or Effective
            Without the Signature of Plaintiffs. ........................................ 7

       C.   Plaintiffs Did Not Sign or Agree to be Bound by the TOS. .......... 11

V.     PARAGRAPH 30 OF THE TOS DOES NOT PROVIDE A BASIS
       FOR PHELPS TO COMPEL ARBITRATION OR REMOVE THIS
       MATTER TO FEDERAL COURT. ................................................ 13

VI.    CONCLUSION. ........................................................................ 16

GREENE BROILLET & WHEELER, LLP
P.O. BOX 2131
SANTA MONICA, CA 90407-2131

1

## <u>TABLE OF AUTHORITIES</u>

2

Page

3

<u>Cases</u>

4

*Amcan Holdings, Inc. v Canadian Imperial Bank of Commerce*
    70 A.D.3d 423 (1st Dep't 2010) ................................................................. 8

5

6

*Apablasa v. Merritt & Co.*
    176 Cal.App.2d 719 (1959) ........................................................................ 9

7

*Banner Entertainment, Inc. v. Superior Court*
    62 Cal.App.4th 348 (1998) ...................................................................... 8, 9

8

9

*Beck v. American Health Group Int'l., Inc.*
    211 Cal.App.3d 1555 (1989) ..................................................................... 8

10

*Calica v Reisman, Peirez, & Reisman*
    296 A.D.2d 367 (2d Dep't 2002) ............................................................... 9

11

12

*California ex rel. Lockyer v. Dynegy, Inc.*
    375 F.3d 831 (9th Cir. 2004) ..................................................................... 3

13

*Chloe Z Fishing Co. v. Odyssey Re (London) Ltd.*
    109 F.Supp.2d 1236 (S.D. Cal. 2000) ................................................... 3, 4

14

15

*Club Haven Inv. Co., LLC v. Capital Co. of Am, LLC*
    160 F.Supp.2d 590 (S.D.N.Y. 2001) ...................................................... 10

16

*Davis v. Nordstrom, Inc.*
    755 F.3d 1089 (9th Cir. 2014) ................................................................. 15

17

18

*Deleon v. Verizon Wireless, LLC*
    207 Cal.App.4th 800 (2012) .................................................................... 15

19

*Emrich v. Touche Ross & Co.*
    846 F.2d 1190 (9th Cir. 1988) ................................................................... 3

20

21

*Ferguson v. Countrywide Credit Indus., Inc.*
    298 F.3d 778 (9th Cir. 2002) ................................................................... 15

22

*First Data Merch. Servs. Corp. v. Oxford Mgmt. Servs.*
    2011 U.S. Dist. LEXIS 34183, *15 (E.D.N.Y. 2011) ........................ 9, 10

23

24

*Forgeron, Inc. v. Hansen*
    149 Cal.App.2d 352 (1957) ....................................................................... 8

25

*Fredianelli v. Jenkins*
    931 F.Supp.2d 1001 (N.D. Cal. 2013) ...................................................... 8

26

*Gaus v. Miles*
    980 F.2d. 564 (9th Cir. 1992) .................................................................... 3

27

28

GREENE BROILLET & WHEELER, LLP
P.O. BOX 2131
SANTA MONICA, CA 90407-2131

1D1C.86

*Grove v. Grove Valve & Regulator Co.*
  4 Cal.App.3d 299 (1970) ........................................................................9

*Healy v. Williams*
  30 A.D.3d 466 (2d Dep't 2006) ...............................................................9

*Ixe Banco, S.A. v. MBNA Am. Bank, N.A.*
  2008 U.S. Dist. LEXIS 19806, *24-25 (S.D.N.Y. Mar. 7, 2008.) ..................9

*John Street Leasehold LLC v. FDIC*
  196 F.3d 379 (2d Cir. 1999) ....................................................................9

*Kahn Lucas Lancaster v. Lark Int'l.*
  186 F.3d 210 (2d Cir. N.Y. 1999) ...........................................................3

*Kessinger v. Organic Fertilizers, Inc.*
  151 Cal.App.2d 741 (1957) .....................................................................9

*Knutson v. Sirius XM Radio, Inc.*
  771 F.3d 559 (9th Cir. 2014) .................................................................15

*Libhart v. Santa Monica Dairy Co.*
  592 F.2d 1062 (9th Cir. 1979) .................................................................3

*Louis Lesser Enterprises, Ltd. v. Roeder*
  209 Cal.App.2d 401 (1962) .....................................................................9

*Merrill Lynch Interfunding, Inc. v. Argenti*
  155 F.3d 113 (2d Cir. 1998) ..................................................................10

*Perez v. DirecTV Group Holdings, LLC*
  (C.D. Cal., May 1, 2017, No. 816CV1440JLSDFMX) 2017 WL
  1836357, at *4–5) ...............................................................................15

*Prestige Foods v. Whale Sec. Co.*
  243 A.D.2d 281 (1st Dep't 1997) .............................................................8

*Quevedo v. Macy's, Inc.*
  798 F.Supp.2d 1122 (C.D. Cal. 2011) ....................................................15

*Roth v. Garcia Marquez*
  942 F.2d 617 (9th Cir. 1991) ...................................................................8

*Sanchez v. Monumental Life Ins. Co.*
  102 F.3d 398 (9th Cir. 1996) ...................................................................2

*StarVest Partners II, L.P. v. Emportal, Inc.*
  101 A.D.3d 610 (1st Dep't Dec. 27, 2012) ...............................................8

*United Steelworkers of America v. Warrior & Gulf Navigation Co.*
  363 U.S. 574 (1960) ..............................................................................15

*Van Ness Townhouses v. Mar Indus. Corp.*
  862 F.2d 754 (9th Cir. 1988) .................................................................15

GREENE BROILLET & WHEELER, LLP
P.O. BOX 2131
SANTA MONICA, CA 90407-2131

*Volunteers of Am. of W. N.Y., Inc. v. Rochester Gas & Elec. Corp.*
    2014 U.S. Dist. LEXIS 95547, *42-43 (W.D.N.Y. July 14, 2014)...................8

*Wilson v. Republic Iron & Steel Co.*
    257 U.S. 92 (1921) .................................................................................3

<u>Statutes</u>

28 U.S.C. § 1441(a) ..................................................................................2

9 U.S.C. § 202..........................................................................................1, 4

9 U.S.C. § 205..........................................................................................4

<u>Other Authorities</u>

New York Convention Art. II, § 1 ............................................................3

New York Convention art. II, § 2 ............................................................3

GREENE BROILLET & WHEELER, LLP
P.O. BOX 2131
SANTA MONICA, CA 90407-2131

1D1C.86

TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, AND TO ALL INTERESTED PARTIES:

PLEASE TAKE NOTICE that on November 6, 2017 or as soon thereafter as the matter may be heard in Courtroom 10B of the above-entitled Court, located at 350 West First Street, Los Angeles, California 90012, Plaintiffs will move this Court pursuant to 28 U.S.C. § 1441 for an Order remanding the above-entitled case to the Superior Court for the State of California. Said Motion will be made on the following grounds:

1.  This Court has no subject matter jurisdiction over this civil action.

2.  Defendant Phelps Dunbar LLP (hereinafter "Phelps") has improperly claimed that an agreement exists between Plaintiffs and Defendant that contains an arbitration clause and that said arbitration clause gives this Court jurisdiction under the "New York Convention" and 9 U.S.C. §§ 201-208.

3.  There is no agreement between Plaintiffs and Defendant Phelps to arbitrate this claim and there is no agreement between Plaintiffs and Phelps that provides this Court with jurisdiction under the New York Convention. The operative agreement between Plaintiffs and Phelps does NOT contain an arbitration clause and does NOT provide this Court with jurisdiction.

4.  The arbitration agreement referenced in Phelps' notice of removal comes from a document that was never signed by Plaintiffs and by its own terms never took effect and is unenforceable. It cannot be used to confer jurisdiction or compel arbitration.

5.  Furthermore, the arbitration clause relied upon by Phelps for removal has no application to this dispute. The arbitration agreement language is conditional. The arbitration provision only applies in the event that Appendix A to the document did not contain provisions regarding choice of law and jurisdiction. Appendix A to the document contains provisions for choice of law and jurisdiction and does not

contain an arbitration clause.  Appendix A of the document controls and makes the arbitration language relied upon by Phelps non-operative.

This Motion is based on this Notice, the attached Memorandum of Points and Authorities, the attached Declarations of Alan Van Gelder, Anthony Hobkinson, Misha Nateghi, and Stephanie DiChiara and attached exhibits, the pleadings, files and records herein, and upon such other oral and documentary evidence as may be presented at the hearing on the Motion.


DATED: August 11, 2017                    GREENE BROILLET & WHEELER, LLP


/s/  Alan Van Gelder
Bruce A. Broillet, Esq.
Scott H. Carr, Esq.
Alan Van Gelder, Esq.
Attorneys for Plaintiff

GREENE BROILLET & WHEELER, LLP
P.O. BOX 2131
SANTA MONICA, CA 90407-2131

1D1C.86

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.      INTRODUCTION.

Defendant Phelps Dunbar, LLP (hereinafter "Phelps") has removed this action to federal court under the "New York Convention" (9 U.S.C. § 202) claiming that this Court has jurisdiction over this legal malpractice action asserting purely state claims solely because there is an arbitration clause in an alleged agreement between Plaintiffs and Phelps.   As explained below, Phelps is incorrect.   There is no arbitration clause that applies to this litigation and therefore the sole ground for Phelps' removal is inapplicable.  This action should therefore be remanded to State Court.

The genesis of this action is a 2012 professional negligence claim against attorney Neil Nydegger and the law firm of Nydegger & Associates (hereinafter referred to as "Nydegger".)  Nydegger was insured under a $1 million professional liability insurance policy underwritten by the Plaintiffs in this action.  Nydegger reported the claim to Plaintiffs in 2012.  (The policy was an eroding/burning limits policy, meaning that the costs of defense come out of the policy.)  Nydegger was sued (the "Nydegger litigation") and Plaintiffs ultimately extended a defense to Nydegger pursuant to the insurance policy. The Los Angeles law firm of Lindahl Beck LLP (hereinafter "Lindahl") served as defense counsel/trial counsel in the Nydegger litigation.   Phelps served as coverage counsel for Plaintiffs in the Nydegger litigation.  Both Phelps and Lindahl owed Nydegger and Plaintiffs a duty to protect Nydegger and Plaintiffs from an excess judgment. (*See* Declaration of Alan Van Gelder, Paragraph 10).

Due to the malpractice of Phelps and Lindahl, the Nydegger litigation was not resolved for an amount within the limits of Nydegger's $1 million policy.   The malpractice of Phelps and Lindahl exposed Plaintiffs to an insurance bad faith claim in the event an excess judgment was obtained against Nydegger.  (Van Gelder Declaration at Paragraph 10.)

GREENE BROILLET & WHEELER, LLP
P.O. BOX 2131
SANTA MONICA, CA 90407-2131

1D1C.86

In September of 2016 a San Diego jury found Nydegger liable for $45 million in damages.  Due to the malpractice of Phelps and Lindahl, Plaintiffs faced exposure for the full amount of the jury's verdict.   Plaintiffs subsequently resolved the Nydegger litigation for an amount well in excess of the original $1 million policy limits.   Plaintiffs then filed a professional negligence claim against Lindahl and Phelps in the Superior Court of the State of California, County of Los Angeles for the damages caused by the malpractice of both law firms.   (Van Gelder Declaration at Paragraph 10).

Phelps removed this matter to Federal Court because Phelps claims that Plaintiffs and Phelps have an agreement to arbitrate this dispute.  Phelps' removal is improper for two reasons.  Plaintiffs and Phelps have NEVER agreed to arbitrate this dispute.  Phelps' improper removal is based on an arbitration clause contained within a document that Plaintiffs never signed and therefore never became operative by its own express terms.  Furthermore, the document relied upon by Phelps for removal does not allow for this matter to be arbitrated even if it had been signed because, by its express terms, that agreement does not apply to the relationship between Phelps and the Plaintiffs.   In short, the sole basis for removal was invalid and this action should be remanded to State Court.

## II.   **STANDARD OF LAW.**

"Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

The removing defendant bears the burden of establishing that removal is proper.  See *Sanchez v. Monumental Life Ins. Co.,* 102 F.3d 398, 403-04 (9th Cir. 1996) (when removing a case to federal court, defendants bear the burden of proving, by a preponderance of the evidence, actual facts sufficient to support

GREENE BROILLET & WHEELER, LLP
P.O. BOX 2131
SANTA MONICA, CA 90407-2131

1   jurisdiction); see also *Gaus v. Miles,* 980 F.2d. 564, 566 (9th Cir. 1992); *Emrich v.*
2   *Touche Ross & Co.,* 846 F.2d 1190, 1195 (9th Cir. 1988) (citing W*ilson v. Republic*
3   *Iron & Steel Co.,* 257 U.S. 92, 97, 42 S.Ct. 35, 66 L.Ed. 144 (1921)). The removal
4   statute is strictly construed against removal, and all doubts respecting jurisdiction
5   are resolved in favor of remand. *California ex rel. Lockyer v. Dynegy, Inc.,* 375
6   F.3d 831, 838 (9th Cir. 2004); *Gaus, supra,* at 566; *Libhart v. Santa Monica Dairy*
7   *Co.,* 592 F.2d 1062, 1064 (9th Cir. 1979).

8   **III.    REQUIREMENTS UNDER THE NEW YORK CONVENTION.**

9       The sole basis for Phelps' removal is the New York Convention. In
10  determining whether a party has entered into an agreement with an arbitration
11  provision that is subject to the New York Convention the Court begins the first step
12  of its inquiry by resolving the following four preliminary questions: (i) Is there an
13  agreement in writing to arbitrate the subject of the dispute? (ii) Does the agreement
14  provide for arbitration in the territory of a signatory of the Convention? (iii) Does
15  the agreement arise out of a legal relationship, whether contractual or not, which is
16  considered as commercial? and (iv) Is a party to the agreement not an American
17  citizen, or does the commercial relationship have some reasonable relation with one
18  or more foreign states? *Chloe Z Fishing Co. v. Odyssey Re (London) Ltd.,* 109
19  F.Supp.2d 1236, 1243 (S.D. Cal. 2000).

20      The New York Convention provides that "each Contracting State shall
21  recognize an agreement in writing under which the parties undertake to submit to
22  arbitration all or any differences which have arisen or which may arise between
23  them . . . concerning a subject matter capable of settlement by arbitration." New
24  York Convention Art. II, § 1. The Convention goes on to define "agreement in
25  writing" to include "an arbitral clause in a contract or an arbitration agreement,
26  **signed by the parties** or contained in an exchange of letters or telegrams." New
27  York Convention art. II, § 2. (Emphasis added). See also *Kahn Lucas Lancaster v.*
28  *Lark Int'l.,* 186 F.3d 210, 214 (2d Cir. N.Y. 1999).

GREENE BROILLET & WHEELER, LLP
P.O. BOX 2131
SANTA MONICA, CA 90407-2131

1D1C.86

GREENE BROILLET & WHEELER, LLP
P.O. BOX 2131
SANTA MONICA, CA 90407-2131

1    The term "agreement in writing" in the New York Convention is defined

2    solely by Article II, Section 2 of the New York Convention.   It is not given any

3    broadened scope by the Federal Arbitration Act, including 9 U.S.C. § 202.  *Chloe Z*

4    *Fishing Co., supra,* at 1244-46.

5    Phelps' removal fails to answer the first question for removal jurisdiction

6    under the New York Convention.   Phelps has failed to show that there is an

7    agreement in writing to arbitrate this matter.[1]

8    **IV.   THERE IS NO AGREEMENT BETWEEN PHELPS AND PLAINTIFFS**

9    **TO ARBITRATE THIS MATTER.**

10   On July 14, 2017 Defendant Phelps removed the matter to Federal Court.  The

11   sole basis for the removal was the allegation that a contract existed between

12   Plaintiffs and Phelps that included an arbitration provision.  Phelps claimed that the

13   arbitration provision placed this litigation under the New York Convention pursuant

14   to 9 U.S.C. § 202 and 9 U.S.C. § 205.  (*See* Paragraphs 22-25 of Defendant's Notice

15   of Removal, attached as Exhibit 1 to the Declaration of Alan Van Gelder).

16   In its notice of removal Phelps did not attach the alleged agreement it

17   contended conferred federal subject matter jurisdiction over this dispute.  The notice

18   also did not indicate when the alleged agreement containing the arbitration provision

19   clause was entered into between Phelps and Plaintiffs.

20   Prior to filing this motion for remand, Plaintiffs' Counsel, pursuant to the

21   Local Rules, met and conferred with counsel for Phelps.  In furtherance of the meet

22   and confer effort, counsel for Phelps produced what Phelps claims is the alleged

23   agreement that justifies removal of this action to Federal Court.  Relevant portions

24   of the alleged agreement are attached as Exhibit 2 to the Declaration of Alan Van

25

26   [1] Given that Phelps has failed to satisfy the first question of whether this dispute is subject
     of the New York Convention, it is not necessary for Plaintiffs to address the remaining questions
27   at this time.   Plaintiffs do not admit that that Phelps has satisfied the remaining questions
     necessary for jurisdiction under the New York Convention and reserve the right to dispute whether
28   Phelps has satisfied the remaining questions.

1   Gelder.  The undated document is referred to as the Terms of Service.  (Hereinafter

2   Exhibit 2 will be referred to as the "TOS").

3        On July 21, 2017 Phelps also filed a motion to compel arbitration/motion to

4   dismiss.  In the motion Phelps partner Marshall Redmon submitted a declaration in

5   which he attached the TOS as Exhibit 1 to his Declaration.  The sole basis for the

6   motion to compel arbitration, like the removal, is Paragraph 30 of the TOS.

7   (Declaration of Van Gelder, Paragraphs 3-9).

8        As explained below, it was improper for Phelps to remove this matter based

9   on the TOS.  The TOS never became the operative agreement between the parties

10  and is not an enforceable agreement.  The actual operative agreement between the

11  parties is the 2012 Service Level Agreement (hereinafter the 2012 SLA).  (See the

12  Declarations of Anthony Hobkinson and Stephanie DiChiara attached to this

13  motion).  The 2012 SLA contains no arbitration clause and prevents Phelps from

14  relying on the TOS to compel arbitration.

15  **A.  The 2012 SLA is the Operative Agreement Between the Parties and**

16     **Prevents Phelps from Removing This Matter.**

17       Attached to this motion for remand are the declarations of Anthony

18  Hobkinson and Stephanie DiChiara.  Mr. Hobkinson is the head of group claims for

19  Certain Underwriters.  Certain Underwriters contracts with third parties, such as

20  Phelps, to provide legal advice/services in connection with the handling of certain

21  insurance claims.  These contracts are sometimes referred to as Service Level

22  Agreements ("SLA.")  Ms. DiChiara works with Mr. Hobkinson and was also

23  responsible for accessing the files containing the SLA between Plaintiffs and Phelps.

24       As set out in the Declarations of Mr. Hobkinson and Ms. DiChiara, in March

25  of 2012 Plaintiffs and Phelps entered into the 2012 SLA.  Relevant portions of the

26  2012 SLA are attached as Exhibit 1 to the Declaration of Ms. DiChiara.  Significant

27  to this motion are the following provisions:

28

GREENE BROILLET & WHEELER, LLP
P.O. BOX 2131
SANTA MONICA, CA 90407-2131

1D1C.86

**Paragraph 40:  Term of this Agreement:   The term of this Agreement commences when executed by both parties.**

**Paragraph 41:  Law and Jurisdiction and resolution of any dispute:  This Agreement (and any dispute hereunder) shall be governed by and construed in accordance with the laws of New York**.

**Any controversy or claim arising out of or relating to this Agreement, or breach thereof, shall be settled by non-binding Mediation to be held in County of New York by a mutually agreed upon mediator.**  If the parties unable to agree on a mediator within 30 days of a written request to mediate, then the dispute shall be referred to JAMS or a similar entity agreed by The Firm and Beazley.  If an impasse is reached by the mediator, The Firm agrees to refrain from any legal action for 90 days thereafter.  (Emphasis added.)

**Paragraph 44:     Modification of the Agreement.     Unless expressly provided for in the Agreement or the appendices hereto, no provision of the Agreement may be amended, waived, or discharged except by agreement in writing signed by each party hereto.**

(Emphasis added.)[2]

Under the express provisions of Paragraph 40 of the 2012 SLA, the agreement became operative when it was signed by both Plaintiffs and Phelps.  As set out in his declaration, Mr. Hobkinson is the person who would review and execute agreements with third-party service providers such as Phelps.  Mr. Hobkinson signed the 2012 SLA and Phelps signed the 2012 SLA.

Phelps began their work for the Plaintiffs on the Nydegger matter in October 2012.  (*See* Declaration of Van Gelder, Paragraph 10(j)).  It cannot be disputed that as of October 2012 the 2012 SLA was the operative agreement between Plaintiffs and Phelps.

As set out in the Declarations of Mr. Hobkinson and Ms. DiChiara, the 2012 SLA and not the TOS has always been and continues to be the operative agreement

---

[2] The 2012 SLA (including all of its appendices) is approximately 67 pages long.  The agreement is a confidential document.  Given that the vast majority of the information contained within the 2012 SLA is not relevant to this motion Plaintiffs are only attaching the portions of the 2012 SLA to this motion.  (The provisions cited in this motion do not contain sensitive confidential information). The 2012 SLA does not contain any arbitration provisions governing this dispute.  (*See* Declarations of Alan Van Gelder at Paragraph 11 and Stephanie DiChiara at Paragraph 9).  In the event it becomes necessary to submit the entire 2012 SLA to the Court, Plaintiffs can do so under seal. Prior to filing this motion, Plaintiffs provided counsel for Phelps a complete and fully executed copy of the 2012 SLA.  (Declaration of Van Gelder at Paragraph 12).

GREENE BROILLET & WHEELER, LLP
P.O. BOX 2131
SANTA MONICA, CA 90407-2131

1D1C.86

between Plaintiffs and Phelps. The express terms of the 2012 SLA do not permit Phelps to force Plaintiffs to arbitrate their claims.

Under the express terms of Paragraph 44 of the 2012 SLA, Phelps <u>cannot</u> force Plaintiffs into arbitration unless Phelps produces an "agreement in writing <u>signed by each party</u>" agreeing to arbitration.[3]  Phelps has never produced such a document. (*See* Declaration of Van Gelder, Paragraphs 3-9).

The TOS does not qualify as a modification under Paragraph 44 of the 2012 SLA because it was never actually signed by the Plaintiffs. (*See* Declarations of Mr. Hobkinson, Ms. DiChiara, and Ms. Misha Nateghi). As such, in the absence of an agreement to arbitrate that was signed by <u>both</u> Plaintiffs and Phelps, the 2012 SLA prevents Phelps from compelling this matter to arbitration.

**B. By Its Express Terms, the TOS is Not Operative or Effective Without the Signature of Plaintiffs.**

Another reason why the TOS does not justify removal is that it never became the operative agreement between the parties. Paragraph 29 of the TOS provides that the agreement only "commences when executed by both parties." Plaintiffs never signed the TOS. As such its alleged arbitration provision never became operative, effective, or binding.

By signing the TOS, Phelps expressly agreed that the TOS would not and could not become binding without the signature of Plaintiffs. Even if the TOS contained a valid arbitration clause, (which, as discussed below, it does not), the arbitration clause cannot be enforced because the Plaintiffs never signed the TOS.[4]

Since it is clear that the proposed written contract would become operative only when signed by the parties and that both parties contemplated that acceptance

---

[3] The requirement that an agreement cannot be modified without an agreement signed by both parties also appears in Paragraph 34 of the TOS.

[4] The requirement that both parties sign a service level agreement is not new to the relationship between Plaintiffs and Phelps. The same language requiring the signatures of both parties is found in Paragraph 40 of the 2012 SLA.

GREENE BROILLET & WHEELER, LLP
P.O. BOX 2131
SANTA MONICA, CA 90407-2131

- 7 -

2:17-cv-05232 JAK (ASx)

1D1C.86

of the contract's terms would be signified by signing it, the failure to sign the agreement means no binding contract was created. (*Beck v. American Health Group Int'l., Inc.,* 211 Cal.App.3d 1555, 1562 (1989), and cases cited there; *Forgeron, Inc. v. Hansen,* 149 Cal.App.2d 352, 360 (1957); *Banner Entertainment, Inc. v. Superior Court,* 62 Cal.App.4th 348, 358 (1998); *Roth v. Garcia Marquez,* 942 F.2d 617, 626-627 (9th Cir. 1991), *Fredianelli v. Jenkins,* 931 F.Supp.2d 1001, 1016 (N.D. Cal. 2013). This is so even though the party later sought to be bound by the agreement indicated a willingness to sign the agreement. (*Forgeron, Inc. v. Hansen, supra,* at 360.)

The result is the same in the Courts of New York. <u>See</u> *StarVest Partners II, L.P. v. Emportal, Inc.,* 101 A.D.3d 610, 613, 957 N.Y.S.2d 93 (1st Dep't Dec. 27, 2012), *Amcan Holdings, Inc. v Canadian Imperial Bank of Commerce,* 70 A.D.3d 423, 426-427, 894 N.Y.S.2d 47 (1st Dep't 2010). As explained in *Volunteers of Am. of W. N.Y., Inc. v. Rochester Gas & Elec. Corp.,* 2014 U.S. Dist. LEXIS 95547, *42-43 (W.D.N.Y. July 14, 2014):

> Moreover, the MOU provided that it could not be amended in the absence of a writing signed by counsel for both parties. Because the MOU stated that the parties would have to enter into a new MOU if they agreed upon remediation, and because, under the MOU, the parties contemplated being bound only by written agreements signed by both counsel, it was unreasonable for VOA to rely on promises allegedly made elsewhere. See *StarVest Partners II, L.P. v. Emportal, Inc.,* 101 A.D.3d 610, 613, 957 N.Y.S.2d 93 (1st Dep't 2012) ("Where a term sheet or other preliminary agreement explicitly requires the execution of a further written agreement before any party is contractually bound, it is unreasonable as a matter of law for a party to rely upon the other party's promises to proceed with the transaction in the absence of that further written agreement[.]") (citing, inter alia, *Prestige Foods v. Whale Sec. Co.,* 243 A.D.2d 281, 663 N.Y.S.2d 14 (1st Dep't 1997) (dismissing promissory estoppel, fraud and negligent misrepresentation counts because plaintiffs' claim of reasonable reliance was "flatly contradicted" by the letter agreements stating that neither party had any legal obligations until both had executed an underwriting agreement)).

"It is essential to the existence of every contract that there should be a reciprocal assent to a definite proposition, and when the parties to a proposed contract have themselves fixed the manner in which their assent is to be manifested, an assent thereto, in any other or different mode, will not be presumed. ... Thus, the

GREENE BROILLET & WHEELER, LLP
P.O. BOX 2131
SANTA MONICA, CA 90407-2131

1D1C.86

failure to reach a meeting of the minds on all material points prevents the formation of a contract even though the parties have orally agreed upon some of the terms, or have taken some action related to the contract." (*Banner Entertainment, Inc., supra,* 358-359; *Grove v. Grove Valve & Regulator Co.,* 4 Cal.App.3d 299, 311-312 (1970); *Louis Lesser Enterprises, Ltd. v. Roeder,* 209 Cal.App.2d 401 (1962); *Apablasa v. Merritt & Co.,* 176 Cal.App.2d 719 (1959); *Kessinger v. Organic Fertilizers, Inc.,* 151 Cal.App.2d 741 (1957).

By the express terms of both the 2012 SLA and the TOS, Phelps agreed that the terms of the 2012 SLA could not be modified by the TOS unless the TOS was signed by both parties.  In this case Phelps agreed that in order for the TOS to become operative and potentially modify the terms of the 2012 SLA, both parties had to sign the TOS.  Without a fully signed TOS, Phelps has no right to complain that the TOS was not enforceable.

Any claim by Phelps that, even though Plaintiffs never signed the TOS, the Court should use Phelps' continued representation of Plaintiffs after April 22, 2016 to imply that the TOS is now the operative agreement, also fails.

A clause prohibiting modification absent a writing signed by the parties is afforded "great deference" by New York courts.  *John Street Leasehold, LLC v. FDIC,* 196 F.3d 379, 382 (2d Cir. 1999); *First Data Merch. Servs. Corp. v. Oxford Mgmt. Servs.,* 2011 U.S. Dist. LEXIS 34183, *15 (E.D.N.Y. 2011); *Calica v Reisman, Peirez, & Reisman,* 296 A.D.2d 367, 744 N.Y.S.2d 495 (2d Dep't 2002); *Healy v. Williams,* 30 A.D.3d 466, 467, 818 N.Y.S.2d 121, 123 (2d Dep't 2006); *Ixe Banco, S.A. v. MBNA Am. Bank, N.A.,* 2008 U.S. Dist. LEXIS 19806, *24-25 (S.D.N.Y. Mar. 7, 2008.)

Under New York law the party seeking enforcement of an alleged modification that runs contrary to a requirement that the modification be signed by both parties has a high burden to overcome.  The party urging enforcement of an unsigned modification must show that: (1) one party has partially performed under

GREENE BROILLET & WHEELER, LLP
P.O. BOX 2131
SANTA MONICA, CA 90407-2131

the terms of the modification; (2) that party's partial performance is "unequivocally referable" to the modification; and (3) this conduct conferred a benefit on the party opposing enforcement. *First Data Merch. Servs. Corp., supra,* at 15-16; *Merrill Lynch Interfunding, Inc. v. Argenti,* 155 F.3d 113, 121 (2d Cir. 1998); *Club Haven Inv. Co., LLC v. Capital Co. of Am, LLC,* 160 F.Supp.2d 590, 592 (S.D.N.Y. 2001). To be "unequivocally referable," "the action taken must be unintelligible or at least extraordinary, explainable only with reference to the oral argument." *First Data Merch Services, supra,* at 15-16; *Merrill Lynch, supra,* at 122.

As set out in the Declaration of Marshall Redmon in support of Phelps' motion for arbitration, he received and signed the TOS in April of 2016. As such, it cannot be disputed that Phelps had already been representing Plaintiffs in connection with the Nydegger matter under the 2012 SLA for over **three and a half years,** a time period in which Plaintiffs contend that Phelps had already committed malpractice. (*See* Declaration of Van Gelder, Paragraph 10.)

This is thus not a case where Plaintiffs' decision not to sign the TOS left Phelps and Plaintiffs with no operative agreement. Plaintiffs' failure to sign the TOS simply meant that the status quo that had been put in place by the 2012 SLA remained unchanged.

Further, Phelps and Plaintiffs never performed under the terms of the alleged modification. As set out in Paragraph 10 of the Declaration of Ms. Nateghi, Plaintiffs and Phelps never arbitrated any disputes in the United Kingdom. The fact that Phelps continued work on the Nydegger matter after April 2016 is not necessarily related to the alleged arbitration provision or the TOS, since as just explained, Phelps had already been working on the Nydegger matter pursuant to the 2012 SLA. Nor is there any evidence that Phelps altered its conduct or suffered some detriment during the Nydegger case as a result of the arbitration provision of the TOS to the benefit of Plaintiffs.

GREENE BROILLET & WHEELER, LLP
P.O. BOX 2131
SANTA MONICA, CA 90407-2131

1D1C.86

**C.  Plaintiffs Did Not Sign or Agree to be Bound by the TOS.**

As set out in the Declarations of Mr. Hobkinson and Ms. Nateghi, Mr. Hobkinson was the person who would review and execute agreements with third-party service providers such as Phelps.  As explained by Ms. DiChiara and Mr. Hobkinson the 2012 SLA was the last mutually signed, operative, and binding service agreement between Plaintiffs and Phelps prior to the filing of this lawsuit. As stated in the Declarations of Mr. Hobkinson, Misha Nateghi, and Stephanie DiChiara, the 2012 SLA is and was the operative agreement at all times during the Nydegger litigation.

The evidence Phelps has submitted in support of its motion to compel arbitration does not establish that the TOS was effective, although unsigned by Plaintiffs.  In the Declaration of Marshall Redmon, he asserts that on April 21, 2016 – well after most of the significant conduct that forms the basis for Plaintiffs' claims in this action - he received the TOS from Ms. Nateghi.  (Relevant portions of the Redmond Declaration are attached as Exhibit 3 to the Declaration of Alan Van Gelder).  According to Mr. Redmon, the TOS arrived via an email from Misha Nateghi.  Ms. Nateghi purportedly wrote, "As promised please see attached a revised Standard Level Agreement for your comments/sign off."  The email continued, "If you would like to discuss any of the provisions please do let me know." (The email is also attached as Exhibit 3 to the Declaration of Van Gelder).

Significantly, the April 21st email did not state that the TOS was the final agreement. The email did not state that the TOS would become effective and binding once it was signed by Mr. Redmon.  Rather, the email invited Mr. Redmon to review the TOS and discuss any questions he may have about the TOS.  (*See* Exhibit 3 to the Declaration of Van Gelder).

On April 22nd Mr. Redmon responded to Ms. Nateghi's email by attaching one page of the TOS with his signature.  In the same email forwarding his signature

GREENE BROILLET & WHEELER, LLP
P.O. BOX 2131
SANTA MONICA, CA 90407-2131

1    Mr. Redmon requested that Ms. Nateghi "send a copy of Beazley's page for our
2    records please." (*See* Exhibit 3 to the Declaration of Van Gelder).

3        Of course, if Mr. Redmon's signature was the only signature necessary for the
4    TOS to become effective, there would have been no need for Mr. Redmon to request
5    a signature page from Ms. Nateghi.  Mr. Redmon's request for a fully executed copy
6    of the TOS was not surprising as he was a partner at a large law firm who was
7    responsible for reviewing the TOS.  In view of the express language of Paragraph 29
8    of the TOS requiring the signature of both parties, Mr. Redmon would have wanted
9    to ensure that it was signed by Plaintiffs.

10       Further, the evidence is clear that no one with authority to bind Plaintiffs
11   approved of the TOS.  Misha Nateghi was one of the claim's managers for
12   Plaintiffs.  In her attached Declaration she explains that in 2016 Plaintiffs wanted to
13   revise the language of the service agreement between Phelps and Plaintiffs.  Ms.
14   Nateghi's department helped prepare language for the approval of both Phelps and
15   Plaintiffs.  The revised language is what ultimately became the TOS on which
16   Phelps now relies.  Ms. Nateghi had no authority to sign the TOS on behalf of
17   Plaintiffs.  Instead, it was understood that any agreement with Phelps would be
18   submitted to Mr. Hobkinson for his review, and upon his approval and execution of
19   the agreement would bind Plaintiffs to terms of the TOS.

20       Before sending the TOS to Mr. Hobkinson for his approval on behalf of the
21   Plaintiffs, Ms. Nateghi sought to ensure that Phelps would be agreeable to the
22   revised language contained in the TOS.  Ms. Nateghi thus sent the TOS to Mr.
23   Redmon for his approval of the language and signature before she would submit the
24   TOS to Mr. Hobkinson for his review.  If Mr. Hobkinson approved of the language
25   contained in the TOS, he would then sign the TOS on behalf of Plaintiffs and the
26   agreement would then (and only then) become effective.

27       Ms. Nateghi makes clear that she lacked the power to bind Plaintiffs as to the
28   TOS.  Nor did Ms. Nateghi tell anyone at Phelps that Plaintiffs had signed the TOS.

GREENE BROILLET & WHEELER, LLP
P.O. BOX 2131
SANTA MONICA, CA 90407-2131

1D1C.86

1  Ms. Nateghi further declares that she understood that the TOS was *not* enforceable

2  between Phelps and Plaintiffs without Mr. Hobkinson's signature on the TOS.  If

3  Ms. Nateghi felt that that the TOS became binding the moment Mr. Redmon signed

4  the TOS she never would have needed to submit the TOS to Mr. Hobkinson for his

5  review, approval, and signature.

6       After Mr. Redmon signed the TOS, Ms. Nateghi sent the TOS to Stephanie

7  DiChiara.  Ms. DiChiara was to provide the TOS to Mr. Hobkinson for his review

8  and if he approved, his signature.  According Ms. DiChiara, she presented the TOS

9  to Mr. Hobkinson for review and signature.  According to both Ms. DiChiara and

10  Mr. Hobkinson, the TOS was not signed by Mr. Hobkinson.

11       In short, the TOS never became the operative and effective agreement

12  between Plaintiffs and Phelps.   Accordingly, the alleged arbitration provision

13  contained in the TOS did not provide a proper basis to remove this action to federal

14  court.

15  **V.    PARAGRAPH 30 OF THE TOS DOES NOT PROVIDE A BASIS FOR**

16  **PHELPS   TO   COMPEL   ARBITRATION   OR   REMOVE   THIS**

17  **MATTER TO FEDERAL COURT.**

18       This Court has no jurisdiction because the TOS is not the operative agreement

19  between Plaintiffs and Phelps.  As discussed above the TOS was never signed by

20  Plaintiffs and is NOT the operative agreement between Plaintiffs and Phelps.

21  Furthermore, the express terms of the fully executed 2012 SLA prevent Phelps from

22  using any language within the TOS to compel Plaintiffs to arbitrate their claims or

23  litigate their claims outside their chosen forum of the State of California.   The

24  provisions of the TOS have absolutely no impact on Plaintiffs' claims against

25  Phelps.

26       This Court also has no jurisdiction because there is no language contained

27  within the TOS that is capable of compelling Plaintiffs to arbitrate their claims

28  against Phelps.  The sole basis for Phelps' removal was its reliance on Paragraph 30

GREENE BROILLET & WHEELER, LLP
P.O. BOX 2131
SANTA MONICA, CA 90407-2131

1D1C.86

of the TOS. However, Phelps' notice of removal improperly quoted and interpreted Paragraph 30 of the TOS. Paragraph 30 of the TOS does not have an effective arbitration provision capable of triggering the New York Convention.

Paragraph 30 of the TOS provides:

**Dispute Resolution:** The parties are free to choose the law and jurisdiction that applies to this agreement which shall be recorded in appendix A. **In the absence of any choice having been recorded in Appendix A** any dispute or differences arising out of or relating to this Agreement will be subject to the laws of England and Wales **and** shall be submitted to the decision of a single arbitrator before the LCIA. The arbitration proceedings shall take place in London, England and shall be conducted in the English language. (Emphasis added).

While Phelps quoted Paragraph 30 in the notice of removal, Phelps did not reference any of the provisions in "Appendix A" of the TOS. Appendix A of the TOS is key to determining the effect of the above Dispute Resolution provision since by its express terms that provision is effective only if there is no applicable provision in Appendix A. Here, Appendix A contains the following provisions:

| Choice of Law | England and Wales |
|---|---|
| Jurisdiction | England and Wales |

Since Appendix A has this choice of law and choice of jurisdiction provision, a "choice" has been "recorded" and therefore under its express terms the remaining provisions of Paragraph 30, including the arbitration provision, have no application. Essentially, the arbitration language in Paragraph 30 is no different than a warning that says, "In case of fire, break glass." If there is no fire there is no need, let alone permission, to break the glass.

If Plaintiffs and Phelps had intended the TOS to also include an arbitration provision, then the TOS would have added such an arbitration provision to Appendix A – just as they did with respect to the choice of law and jurisdiction provisions.

GREENE BROILLET & WHEELER, LLP
P.O. BOX 2131
SANTA MONICA, CA 90407-2131

"The threshold issue in deciding a motion to compel arbitration is 'whether the parties agreed to arbitrate.'" *Quevedo v. Macy's, Inc.,* 798 F.Supp.2d 1122, 1133 (C.D. Cal. 2011) (quoting *Van Ness Townhouses v. Mar Indus. Corp.,* 862 F.2d 754, 756 (9th Cir. 1988)). "[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Knutson v. Sirius XM Radio, Inc.,* 771 F.3d 559, 565 (9th Cir. 2014) (alteration in original) (quoting *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574 (1960))). "When determining whether a valid contract to arbitrate exists, we apply ordinary state law principles that govern contract formation." *Davis v. Nordstrom, Inc.,* 755 F.3d 1089, 1093 (9th Cir. 2014) (citing *Ferguson v. Countrywide Credit Indus., Inc.,* 298 F.3d 778, 782 (9th Cir. 2002)).

"It is undisputed that under California law, mutual assent is a required element of contract formation." *Knutson, supra,* at 565.   The mutual assent necessary to form a contract "is determined under an objective standard applied to the outward manifestations or expressions of the parties, i.e., the reasonable meaning of their words and acts, and not their unexpressed intentions or understandings." *Deleon v. Verizon Wireless, LLC,* 207 Cal.App.4th 800, 813, 143 Cal.Rptr.3d 810 (2012) (citation and internal quotation marks omitted); see also *Perez v. DirecTV Group Holdings, LLC,* (C.D. Cal., May 1, 2017, No. 816CV1440JLSDFMX) 2017 WL 1836357, at *4–5)

Phelps removed this matter based on an arbitration clause contained within Paragraph 30 of the TOS that only applies in the event Appendix A is silent on the issues of law and jurisdiction.   Appendix A contains answers on the questions of choice of law and jurisdiction.   As such, Phelps can only move to compel arbitration and remove this matter to Federal Court under the New York Convention if there is

GREENE BROILLET & WHEELER, LLP
P.O. BOX 2131
SANTA MONICA, CA 90407-2131

Plaintiff's Motion for Remand

1D1C.86

1    an arbitration clause in Appendix A.  No such clause exists in Appendix A so there

2    is no basis for arbitration and no basis for removal to Federal Court.[5]

3    **VI.    CONCLUSION.**

4         The TOS was not signed by Plaintiffs.  The TOS by its own terms states that

5    it cannot take effect or be binding on Plaintiffs unless both sides sign the agreement.

6    The 2012 SLA prevents the TOS from modifying the 2012 SLA without signatures

7    of both Plaintiffs and Phelps.  The intent of the parties is clear.  The TOS and its

8    alleged arbitration provision are not binding and enforceable without the signature

9    of Plaintiffs.  The alleged arbitration provision in the TOS does not provide this

10   Court jurisdiction because it never took effect and is not binding on Plaintiffs.  The

11   operative agreement between Plaintiffs and Phelps is the 2012 SLA.  Given that the

12   2012 SLA has no provision that falls under the New York Convention, there is no

13   subject matter jurisdiction.

14        The arbitration provision in Paragraph 30 of the TOS only takes effect if there

15   is no choice of law/jurisdiction selection in Appendix A.  The TOS has both

16   selections made in Appendix A.  As such Paragraph 30 cannot be used to compel

17   arbitration.

18        Plaintiffs' motion for remand should be granted.

19

20   ///

21   ///

22   ///

23   ///

24   ///

25

---

[5] Again, Plaintiffs dispute any claim that the TOS is the operative agreement between the parties and that any provisions contained within the TOS have any effect on Plaintiffs' claims against Phelps.  Plaintiffs make this argument only to show that Phelps never had any basis to remove this matter to Federal Court or compel arbitration.  Nothing in this motion should be construed as an agreement by Plaintiffs that this matter should be litigated in the Courts of the United Kingdom under the laws of England and Wales.

DATED: August 11, 2017                    GREENE BROILLET & WHEELER, LLP


/s/  Alan Van Gelder
Bruce A. Broillet, Esq.
Scott H. Carr, Esq.
Alan Van Gelder, Esq.
Attorneys for Plaintiff

GREENE BROILLET & WHEELER, LLP
P.O. BOX 2131
SANTA MONICA, CA 90407-2131

- 17 -                    2:17-cv-05232 JAK (ASx)
Plaintiff's Motion for Remand

1D1C.86

1

## **CERTIFICATE OF SERVICE**

2

3          I hereby certify that on August 11, 2017, I filed the foregoing document

4    entitled **PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR**

5    **REMAND;    MEMORANDUM    OF    POINTS    AND    AUTHORITIES;**

6    **DECLARATIONS OF ALAN VAN GELDER, ANTHONY HOBKINSON,**

7    **MISHA NATEGHI, STEPHANIE DICHIARA, and EXHIBITS** with the Clerk

8    of the Court using the CM/ECF system, which will send a notice of electronic filing

9    to all counsel of record in this action.

10

11

12                                        /s/  Alan Van Gelder
                                          Alan Van Gelder, Esq.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GREENE BROILLET & WHEELER, LLP
P.O. BOX 2131
SANTA MONICA, CA 90407-2131

1D1C.86