GREENE BROILLET & WHEELER, LLP
LAWYERS
100 WILSHIRE BOULEVARD, SUITE 2100
P.O. BOX 2131
SANTA MONICA, CALIFORNIA 90407-2131
TEL. (310) 576-1200
FAX. (310) 576-1220

(SPACE BELOW FOR FILING STAMP ONLY)

BRUCE A. BROILLET, State Bar No. 63910
*bbroillet@gbw.law*
SCOTT H. CARR, State Bar No. 156664
*scarr@gbw.law*
ALAN VAN GELDER, State Bar No. 221820
*avangelder@gbw.law*

Attorneys for ___Plaintiff___

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CERTAIN UNDERWRITERS AT LLOYD'S, LONDON,<br><br>                        Plaintiff,<br><br>vs.<br><br>PHELPS DUNBAR, LLP; LINDAHL BECK, LLP; and DOES 1-10, inclusive,<br><br>                        Defendants. | CASE NO. 2:17-cv-05232 JAK (ASx)<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR REMAND; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF DAVE SOUTHGATE WITH EXHIBITS**<br><br>Date  :    October 23, 2017<br>Time  :    8:30 a.m.<br>Ctrm  :    10B<br><br>[Assigned for All Purposes to: Hon. John A. Kronstadt, Courtroom 10B] |

TO THE HONORABLE COURT, ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD HEREIN:

Plaintiffs Certain Underwriters at Lloyd's, London (hereinafter CU or Plaintiffs) hereby submit the following reply in support of their motion for remand.

1D1C.BE

1

**TABLE OF CONTENTS**

2                                                                                            <u>Page</u>

3   I.     PHELPS IMPROPERLY REMOVED THIS MATTER. ...................................1

4          A.  Phelps is Estopped from Modifying the 2012 SLA. ...................................1

5          B.  Without Plaintiffs' Signature the TOS Provides No Basis for
               Jurisdiction or Arbitration. ..........................................................................2

6
           C.  The TOS Cannot Be Used to Compel Arbitration. ...................................4
7

    II.    PHELPS HAS FAILED TO SATISFY THE REQUIREMENTS OF
8          THE NEW YORK CONVENTION. ...............................................................6

9   III.   CONCLUSION. ...............................................................................................10

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1D1C.BE

1

# **TABLE OF AUTHORITIES**

2                                                                                                   Page

3   Cases

4   *Arnold v. Sphere Drake Ins.*,
       1992 U.S. Dist. LEXIS 17809, *2-3 (E.D. La. 1992) ................................. 6, 7

5
6   *Chloe Z Fishing Co., Inc. v. Odyssey Re (London) Limited*,
       109 F.Supp.2d 1236 (S.D. Cal. 2000) ........................................................ 8

7   *Granite Rock Co. v. Int'l Bhd. of Teamsters*,
       130 S.Ct. 2847 (2010) ................................................................................ 5
8
9   *Greenburg v. Park Indemnity Limited*,
       2013 WL 12123695 (C.D. 2013) ........................................................ 2, 5, 9

10  *Han v. Synergy Homecare Franchising, LLC*,
       2017 U.S. Dist. LEXIS 15021, *12 (N.D. Cal., 2017) ............................... 5
11
12  *Howsam v. Dean Witter Reynolds, Inc.*,
       537 U.S. 79 (2002) ..................................................................................... 5

13  *In re Van Dusen*,
       654 F.3d 838 (9th Cir. 2011) ...................................................................... 5
14
15  *Mundi v. Union Sec. Life Ins. Co.*,
       555 F.3d 1042 (9th Cir. 2009) .................................................................... 2

16  *Oracle Am. Inc. v. Myraid Grp A.G.*,
       724 F.3d. 1069 (9th Circuit, 2013) ............................................................ 5
17
18  *Sphere Drake Ins. PLC v. Marine Towing, Inc.*,
       16 F.3d 666 (5th Cir., 1994) ...................................................................... 6

19

20

21

22

23

24

25

26

27

28

Plaintiffs' Reply in Support of Motion for Remand

1D1C.BE

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   PHELPS IMPROPERLY REMOVED THIS MATTER.

The entire premise of Defendant Phelps Dunbar, LLP's (hereinafter "Phelps") removal was the claim that the parties had clearly and unequivocally entered into an agreement signed by both parties that required this matter to be arbitrated. Phelps' entire effort to arbitrate this matter began to fall apart the moment Phelps was required to produce evidence to support its claims.

### A.  Phelps is Estopped from Modifying the 2012 SLA.

It is undisputed by the parties that: (1) in 2012 both Phelps and CU signed a Service Level Agreement (Hereinafter the 2012 SLA); (2) no arbitration provision is contained within the 2012 SLA; and (3) when Phelps began work on the Nydegger matter and committed legal malpractice, the 2012 SLA was the operative agreement.

Phelps argues that this Court can ignore the 2012 SLA because the 2012 SLA was modified and replaced by the April 2016 Terms of Service document. (Hereinafter the TOS).  However, it is undisputed that CU never signed the TOS.[1]

Phelps argues that the Court should disregard that CU never signed the TOS because CU prepared the TOS and Phelps signed it. Phelps argues that its signature alone on the TOS is sufficient to render the 2012 SLA null and void.

In order for Phelps to advance this argument Phelps asks the Court to ignore Paragraph 44 of the 2012 SLA, which states that the terms of the 2012 SLA cannot be modified without "agreement in writing signed by each party hereto."

Phelps' agreement not to challenge the 2012 SLA without a written agreement signed by both parties was an important part of Phelps getting hired by

---

[1] As set out in Plaintiffs' moving papers, Anthony Hobkinson signed the 2012 SLA. He was also the person responsible for reviewing and potentially signing the TOS. Mr. Hobkinson never signed the TOS. Phelps weakly claims that Plaintiffs did not conduct a "corporate records search" to further confirm that Mr. Hobkinson did not sign the TOS. Phelps ignores the Declaration of Stephanie DiChiara. Ms. DiChiara states that she went through Plaintiffs' records. The TOS was never signed and the operative agreement contained within those records is the 2012 SLA.

1  CU to serve as counsel on the Nydegger matter.  By agreeing to the 2012 SLA and

2  its anti-modification provisions, Phelps became attorneys on the Nydegger matter.

3  Furthermore, it is undisputed that for approximately three and a half years Phelps

4  reaped the financial benefits of signing the 2012 SLA through its continued

5  representation of CU in the Nydegger matter.

6      Phelps cannot reap the benefits of the 2012 SLA and then seek to avoid the

7  parts of the 2012 SLA that it finds burdensome.  Phelps and CU did not agree to

8  arbitrate this dispute in 2012.  Furthermore, Phelps also agreed that it would not

9  seek to challenge the 2012 SLA or modify it (by adding an arbitration provision)

10  unless it could produce an agreement signed by both parties.  As this Court ruled in

11  *Greenburg v. Park Indemnity Limited* 2013 WL 12123695 (C.D. 2013) equitable

12  estoppel precludes a party from claiming the benefits of a contract while

13  simultaneously attempting to avoid the burdens that contract imposes.  *Id.* at 7.

14  [citing *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1045 (9th Cir. 2009)].

15      By signing the 2012 SLA, Phelps specifically agreed to waive all of the

16  arguments that it currently making in connection with its removal of this matter and

17  motion to compel arbitration.  At the time Phelps signed the 2012 SLA it was a

18  sophisticated entity, a law firm that specializes in, among other things contract law

19  and insurance law.  Phelps knew exactly what it was giving up when it signed a

20  document that stated it could not challenge/modify the 2012 SLA without an

21  agreement signed by CU and Phelps.  (Similar language forbidding modification of

22  the agreement without a written agreement signed by both Phelps and CU also

23  appears in Paragraph 34 of the TOS.)

24  **B. Without Plaintiffs' Signature the TOS Provides No Basis for**

25      **Jurisdiction or Arbitration.**

26      According to Phelps because CU prepared the TOS, it was never actually

27  necessary for CU to sign the TOS.  In making this argument, Phelps ignores the

28  Paragraph 29 of the TOS which provides that the agreement only "commences when

1D1C.BE

1   executed by both parties." Plaintiffs never signed the TOS. As stated in Plaintiffs'

2   moving papers, the TOS and its alleged arbitration provision never became

3   operative, effective, or binding.

4       Phelps cannot have it both ways. Phelps removed this matter and sought to

5   compel arbitration relying exclusively on the terms of the TOS. Phelps does not get

6   the option of picking and choosing which provisions of the TOS must be enforced

7   and which provisions can be ignored. Because Phelps is seeking to enforce certain

8   provisions of the TOS, Phelps is estopped from arguing that other provisions of the

9   TOS can be circumvented or ignored.

10      Phelps complains that it believed it was providing legal services to CU under

11   the terms of the TOS. But other than a self-serving statement from Mr. Redmon,

12   Phelps submits no evidence. Phelps had been providing services to CU in

13   connection with the Nydegger matter under the 2012 SLA for years. Nowhere does

14   Phelps provide any evidence that it ever arbitrated a dispute with CU pursuant to the

15   TOS. Nowhere does Phelps explain what it did or would have done differently on

16   the Nydegger matter had the TOS not been signed or if Phelps had realized the TOS

17   did not contain an arbitration provision.

18      Phelps attempts to imply that the TOS that was signed by Mr. Redmon in

19   April of 2016 set the hourly rates that Phelps charged Plaintiffs in 2016. This is

20   simply not accurate. Attached to this reply is the Declaration of David Southgate.

21   As set out in Mr. Southgate's Declaration, pursuant to the 2012 SLA, every year

22   Phelps submitted the hourly rates it proposed that it would charge Plaintiffs. Phelps

23   submitted the hourly rates in December of 2015. They were agreed to by Plaintiffs

24   in January 2016. As seen in Mr. Southgate's Declaration, Phelps began billing at

25   the 2016 hourly rate prior to the TOS being sent to and signed by Phelps in April

26   2016. As explained by Mr. Southgate, the 2016 hourly rates that Phelps charged

27   Plaintiffs were pursuant to the 2012 SLA, not the TOS.

28

1D1C.BE

## C. The TOS Cannot Be Used to Compel Arbitration.

Even if the TOS could be considered the operative agreement between the parties, Phelps' removal and motion to compel arbitration fail because they hinge on Paragraph 30 of the TOS. Paragraph 30 of the TOS provides:

> **Dispute Resolution:** The parties are free to choose the law and jurisdiction that applies to this agreement which shall be recorded in appendix A. **In the absence of any choice having been recorded in Appendix A** any dispute or differences arising out of or relating to this Agreement will be subject to the laws of England and Wales **and** shall be submitted to the decision of a single arbitrator before the LCIA. The arbitration proceedings shall take place in London, England and shall be conducted in the English language.

Paragraph 30 states that only in the event that a choice of law and jurisdiction selection is not recorded in the Appendix A of the TOS will the matter be subject to the laws of England and Wales and be submitted to arbitration in London, England. The TOS has a choice of law and jurisdiction selected in Appendix A and nowhere does Appendix A state that the matter should be arbitrated.

Phelps asks this Court to selectively ignore the first half of Paragraph 30 and read the remaining portion of the paragraph as requiring arbitration in London, England under the laws of England and Wales under all circumstances, regardless of what the parties recorded in Appendix A.

If Paragraph 30 required arbitration in London, England under the laws of England and Wales in all circumstances, there would be no need to reference Appendix A. There would be no need to spell out what would happen in the event the parties did not include questions of choice of law and jurisdiction in Appendix A. Furthermore, if the parties had agreed to submit to the jurisdiction of an arbitrator in London, England, the parties would have spelled out such an agreement in Appendix A. Appendix A guides the jurisdiction and law of a dispute that arises under the TOS and it contains no arbitration clause.

Phelps complains that this Court cannot resolve whether or not the TOS contains a valid arbitration clause. In doing so, Phelps disregards this Court's ruling

1  on the issue in *Greenburg v. Park Indemnity Limited, supra,* at 3 (a case Phelps

2  relies on for another point):

> 3  The proper role of the courts in "addressing threshold questions of arbitrability" is "to consider only the validity and scope of the arbitration clause itself." *In re Van Dusen,* 654 F.3d 838, 842 (9th Cir. 2011). Courts often decide "whether the parties are bound by a given arbitration clause" and "disagreement[s] about whether an arbitration clause in a concededly binding contract applies to a particular type of controversy." *Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 84 (2002). A court can order arbitration only when it is satisfied that parties have agreed to arbitrate the particular dispute in question. *Granite Rock Co. v. Int'l Bhd. of Teamsters,* 130 S.Ct. 2847, 2856 (2010). To address such an issue, "the courts must resolve any issue that calls into question the formation or applicability of the specific arbitration clause that a party seeks to have the court enforce."

10  Phelps argues that because Paragraph 30 of the TOS makes reference to the

11  LCIA, only a LCIA arbitrator can decide whether the TOS contains a valid

12  arbitration clause. Phelps improperly relies upon cases such as *Oracle Am. Inc. v.*

13  *Myraid Grp A.G.,* 724 F.3d. 1069, 1072-75 (9th Circuit, 2013). *Oracle* was

14  examined in *Han v. Synergy Homecare Franchising, LLC,* 2017 U.S. Dist. LEXIS

15  15021, *12 (N.D. Cal., 2017). *Han* explained that the specific language of the

16  arbitration provision dictates whether or not a party can advance an argument that

17  interpretation of an arbitration provision has been delegated away from the Courts.

18  "To determine whether the delegation of arbitrability is clear and unmistakable, the

19  Court is tasked with examining the language itself." *Han, supra,* at 12.

20  According to *Han*, in *Oracle,* the parties clearly expressed their intent on the

21  issue of whether arbitrability was delegated to the arbitrator. After comparing the

22  arbitration provision at issue in *Han* to the one in *Oracle,* the *Han* Court concluded

23  that the language at issue in *Han* did not clearly delegate to the arbitrator. As such,

24  the Court in *Han* stated it had the authority to decide arbitrability. *Han, supra,* at

25  15.

26  An examination of the language of Paragraph 30 of the TOS demonstrates

27  that the TOS does not deprive the Court of the ability to decide whether this dispute

28  falls outside of the alleged arbitration provisions of Paragraph 30. It is ONLY in the

1   absence of a choice of law and jurisdiction agreement recorded in Appendix A that
2   an arbitrator in London, England is given authority under LCIA to decide disputes
3   concerning TOS.  The TOS specifically carves out and refuses to give the arbitrator
4   any authority over disputes over the agreement if a choice of law and jurisdiction is
5   recorded in Appendix A.  Given that Appendix A records the choice of law and
6   jurisdiction, the Court has the authority to determine that Paragraph 30 of the TOS is
7   not a valid means to compel arbitration in this matter.

8   **II.     PHELPS HAS FAILED TO SATISFY THE REQUIREMENTS OF THE**
9           **NEW YORK CONVENTION.**

10      Phelps' reply in support of its motion to compel arbitration cites cases
11   discussing the New York Convention to support its claim that the New York
12   Convention applies even though CU never signed the TOS.  Those cases are
13   distinguishable from the instant matter and actually support Plaintiffs' position that
14   this case should be remanded back to State Court.

15      The facts in this case show that the "agreement in writing" requirement of the
16   New York Convention is NOT satisfied even under criteria set out in *Sphere Drake*
17   *Ins. PLC v. Marine Towing, Inc.*, 16 F.3d 666 (5th Cir., 1994).

18      In *Sphere Drake*, Marine Towing sued to enforce the terms of an insurance
19   policy it had purchased through a broker from Sphere Drake.  The lawsuit that
20   ultimately resulted in the 5th Circuit's *Sphere Drake* decision was originally filed in
21   Louisiana State Court by Marine Towing and others.  The plaintiffs had filed suit to
22   obtain a declaration that the policy issued by Sphere Drake covered their losses.
23   The policy that Marine Towing sued under contained an arbitration clause. *Arnold v.*
24   *Sphere Drake Ins.*, 1992 U.S. Dist. LEXIS 17809, *2-3 (E.D. La. 1992).

25      Given that the plaintiffs were suing based on an insurance policy that
26   contained an arbitration clause, the defendants removed the matter to the Eastern
27   District of Louisiana under the New York Convention.  In *Arnold v. Sphere Drake*
28   *Insurance, supra,* the district court ultimately found that the New York Convention

1   applied.   In reaching it conclusion that the New York Convention applied the
2   District Court noted that Marine Towing could not seek coverage under the
3   insurance policy that contained an arbitration clause and at the same time deny the
4   validity of the arbitration clause within the policy. *Arnold, supra,* at *12.   The
5   District Court also held that there was an exchange of correspondence between
6   Sphere Drake and Marine Towing's Agent which constituted an agreement in
7   writing: "Marine Towing's broker made a written offer (the "slip") and Sphere
8   Drake accepted the offer by stamping, initialing, and marking the slip as "bound"
9   and by delivering the signed policy to Marine Towing's broker." *Arnold, supra,* at
10  *8.

11      *Marine Towing* appealed the matter to the Fifth Circuit which issued the
12  *Sphere Drake* decision.   The Fifth Circuit upheld the district court's decision to
13  apply the New York Convention.  "The insurance contract [that Marine Towing was
14  relying on] indisputably contains an arbitral clause.  Because what is at issue here is
15  an arbitral clause in a contract, the qualifications applicable to arbitration
16  agreements do not apply.  A signature is therefore not required.  The district court
17  properly did not require that the contract containing an arbitral provision be signed
18  to constitute an agreement in writing under the Convention." *Id.* at 669-70.

19      In this litigation, Plaintiffs are not suing Phelps to enforce the terms of the
20  TOS.   In fact, the relationship between Plaintiffs and Phelps, as well as many acts of
21  malpractice by Phelps all pre-date Phelps' signature on the TOS on April 22, 2016.
22  Plaintiffs' claims against Phelps are not tied to the TOS.

23      Unlike this case, the instrument (the "slip") in *Sphere Drake* was designed to
24  create a binding agreement between the parties without the signature of Marine
25  Towing.   It was designed to be signed only by Sphere Drake and did not require the
26  signature of Marine Towing.  Marine Towing could not dispute that the signature by
27  Sphere Drake created a binding agreement between the parties.  If Marine Towing
28  had disputed the existence of the agreement it had no claim.  Compare the slip in

1D1C.BE

1    *Sphere Drake* to the TOS.  The TOS is specifically designed so that it <u>cannot</u> take

2    effect <u>without</u> the signature of <u>both</u> parties.  The 2012 SLA is specifically designed

3    to prevent the TOS from modifying the 2012 SLA <u>without both signatures</u>.

4    Plaintiffs' claims against Phelps do not require the existence of the TOS.

5         The situation in *Chloe Z Fishing Co., Inc. v. Odyssey Re (London) Limited*,

6    109 F.Supp.2d 1236 (S.D. Cal. 2000) is similar to *Sphere Drake* and is also

7    distinguishable from this case.   In *Chloe Z*, the plaintiffs purchased insurance

8    policies from defendants that contained arbitration clauses.   However, the policies

9    were never signed by the parties. The insureds obtained the policies in the following

10   manner. Plaintiffs were represented by brokers that would deal with the London-

11   based insurers on plaintiffs' behalf. Each year the brokers would submit a "slip" to

12   the defendant insurers indicating their request for a quotation. Once negotiations

13   were complete between the brokers and the insurers, the insurers would stamp the

14   slip and endorse it with the word "Bound," the date, and the policy number.  Finally,

15   defendants would issue Certificates of Insurance to the brokers to confirm the terms

16   of the policy.  *Id.* at 1248.  *Chloe Z* determined that "the brokers' slips and the

17   defendants' certificates of insurance constitute and exchange of letters evidencing an

18   assent to a contract ... which contain the arbitration clauses at issue." *Id.* at 1250.

19        As with *Sphere Drake*, in *Chloe Z*, the "slip" was designed so that it only had

20   to be signed by one party.  The slip was designed to purchase an insurance policy, a

21   policy that contained an arbitration clause.  The plaintiffs in *Chloe Z* needed the slip

22   to constitute an agreement in order to have a claim.   Compare the slip/insurance

23   contract in *Chole Z* to the TOS.  The TOS is specifically designed so that it cannot

24   take effect without the signature of both parties.   The 2012 SLA is specifically

25   designed to prevent the TOS from modifying the 2012 SLA without both signatures.

26   Plaintiffs' claims against Phelps do not require the existence of the TOS and in

27   many circumstances predate the TOS.

28

Plaintiffs' Reply in Support of Motion for Remand

1D1C.BE

1    Phelps' reliance on *Greenburg v. Park Indemnity Limited,* 2013 WL

2    12123695 (C.D. 2013) is also misplaced.   In *Greenburg* the plaintiff was an

3    employee of KPMG.   The employee sought indemnification from an insurance

4    company under a policy purchased by KPMG.   The employee, standing in the shoes

5    of KPMG, sued to obtain the benefits of the policy.

6        The policy that Greenburg sought to obtain his benefits from contained an

7    arbitration clause.   The defendant removed based on the New York Convention.

8    The plaintiff argued that he never signed anything agreeing to arbitrate a dispute

9    over the payment of insurance benefits.   The defendant countered that plaintiff's

10   signature was unnecessary because KPMG had agreed to the arbitration provision.

11       The Court in *Greenburg* compelled arbitration because the defendant

12   produced evidence that the exchange of documents between KPMG and the

13   insurance company constituted a written agreement.   Unlike Phelps, the defendants

14   in *Greenberg* produced substantial evidence that the parties had actually reached an

15   agreement.   The amount of evidence needed by *Greenburg* to compel arbitration

16   only highlights how poor a showing Phelps has made in this case.   For example in

17   *Greenberg* the defendant was able to show:

18       "Park Indemnity would then "issue a binding letter, confirming coverage for
         KPMG, the period of coverage, and the details of the coverage being provided
19       (the 'Binding Coverage Letter')." *Id.* "Once Park issued a Binding Coverage
         Letter, the policy was considered binding by insurer and insured. This is
20       consistent with normal industry practice at the relevant time." *Id.* This same
         process was used with respect to the Policy. *Id.* at 3. And, on May 30, 2003,
21       Park Indemnity sent such a letter to Aon with respect to the Policy. *Id.*; Dkt.
         24-1, Ex.1. This "Binding Coverage Letter" stated, among other things, that it
22       was regarding "June 1st 2003 Renewal Coverage" and that "[w]e hereby
         confirm that Park Indemnity Limited ... has bound the following coverages
23       for KPMG member firms for the period 12:01 a.m. June 1st 2003 to 12:01
         a.m. June 1st 2004." Dkt. 24-1, Ex.1 at 1. Aon then "confirmed to KPMG that
24       Park [Indemnity] had bound cover effective June 1, 2003." Dkt. 24-1, Exh. 1
         at 1. These exchanges evidenced the parties' written assent to the Policy."

25       "Indeed, the Binding Coverage Letter states that it is "Re: June 1st Renewal
26       Coverage," and the 2002-2003 insurance policy with KPMG contains an
         identical arbitration provision as that found in the 2003-2004 policy. Dkt. 24-
27       1, Exh. 5. Finally, KPMG's notification of Park Indemnity of potential claims
         in 2003 provides further evidence that the Policy was in place. Otherwise,

28

Park Indemnity would have responded to the notice by stating that there was no policy in place." Id. at 5-6.

In finding in favor of the defendant, the *Greenburg* Court also noted that because the plaintiff was suing to obtain the benefits of an insurance agreement that contained an arbitration clause, the plaintiff could not ask the court to ignore the fact that the agreement contained an arbitration clause. *Id.* at 7.

The showing made by Phelps in this matter falls far short of what was required in *Greenburg*. The TOS was not signed by Plaintiffs. The TOS and the 2012 SLA contain provisions preventing modification without Plaintiffs' signatures. Between Phelps' signature on the TOS in April of 2016 and the present there is no history of the parties agreeing to arbitrate. The parties were already operating and billing under the 2012 SLA. Phelps received a document for review from a person who did not have authority to bind CU to any arbitration clause. Furthermore, CU is not suing Phelps to enforce the terms of the TOS. The attorney client relationship existed prior to the TOS and is not dependant on the existence of the TOS. Standing next to *Greenburg*, it is clear that Phelps does not have sufficient evidence to compel arbitration.

## III.    CONCLUSION.

For the above reasons and the reasons set out in the moving papers, Plaintiffs' motion for remand should be granted and Phelps' motion to compel arbitration should be denied.

DATED: September 15, 2017          GREENE BROILLET & WHEELER, LLP


                                    /s/  Alan Van Gelder, Esq.
                                    Bruce A. Broillet, Esq.
                                    Scott H. Carr, Esq.
                                    Alan Van Gelder, Esq.
                                    Attorneys for Plaintiffs

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CERTIFICATE OF SERVICE

I hereby certify that on September 15, 2017, I filed the foregoing document entitled **PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR REMAND; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF DAVE SOUTHGATE WITH EXHIBITS** with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record in this action.


/s/  Alan Van Gelder, Esq.
Alan Van Gelder, Esq.