**GREENE BROILLET & WHEELER, LLP**
LAWYERS
100 WILSHIRE BOULEVARD, SUITE 2100
P.O. BOX 2131
SANTA MONICA, CALIFORNIA 90407-2131
TEL. (310) 576-1200
FAX. (310) 576-1220

(SPACE BELOW FOR FILING STAMP ONLY)

BRUCE A. BROILLET, State Bar No. 63910
*bbroillet@gbw.law*
SCOTT H. CARR, State Bar No. 156664
*scarr@gbw.law*
ALAN VAN GELDER, State Bar No. 221820
*avangelder@gbw.law*

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CERTAIN UNDERWRITERS AT LLOYD'S, LONDON,<br><br>Plaintiff,<br><br>vs.<br><br>PHELPS DUNBAR, LLP; Lindahl BECK, LLP; and DOES 1-10, inclusive,<br><br>Defendants. | CASE NO. 2:17-cv-05232 JAK (ASx)<br>(Superior Court Case No. BC662052)<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT LINDAHL BECK, LLP'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. 1404(a); MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[Filed Concurrently with Declaration of Alan Van Gelder in Support Thereof with Exhibits]<br><br>Date : October 23, 2017<br>Time : 8:30 a.m.<br>Crtrm : 10B<br><br>[Assigned for All Purposes to: Hon. John A. Kronstadt, Courtroom 10B] |

## **TABLE OF CONTENTS**

Page

I. INTRODUCTION. ...................................................................................................1

II. THE TRANSFEREE COURT DOES NOT HAVE JURISDICTION. ............1

III. TRANSFER DOES NOT SERVE THE INTERESTS OF THE CONVENIENCE OF THE PARTIES, WITNESSES, AND INTERESTS OF JUSTICE. ....................................................................................3

    A. Great Weight Should be Afforded to Plaintiffs' Choice of Forum. .............4

    B. Defendants are Accused of Exposing Plaintiffs to a Claim of Bad Faith Refusal to Settle Within Policy Limits. ...............................................5

    C. Los Angeles Has a More Significant Connection to the Claims Being Asserted than San Diego. ....................................................................7

    D. The San Diego Witnesses Identified by Lindahl are not Important Enough to Displace Plaintiffs' Choice of Venue. .......................................10

IV. CONCLUSION. ....................................................................................................14

# TABLE OF AUTHORITIES

Page

Cases

*Amini Innovation Corp. v. JS Imps., Inc.*,
   497 F.Supp.2d 1093 (C.D. Cal., 2017) .............................................................. 10

*Brandon Apparel Group v. Quitman Mfg. Co.*,
   42 F.Supp.2d 821 (N.D. Ill., 1999) ...................................................................... 9

*Decker Coal Co. v Commonwealth Edison Co.*,
   805 F.2d 834 (9th Cir. 1986) ............................................................................... 3

*E. & J. Gallo Winery v. F. & P. S.P.A.*,
   899 F.Supp. 465 (E.D. Cal. 1994) ...................................................................... 3

*Fireman's Fund Ins. Co. v. National Bank for Coops.*,
   1993 U.S. Dist. LEXIS 12219, *11-12 (N.D. Cal., 1993) ................................ 10

*Graciano v. Mercury General Corp.*,
   (2014) 231 Cal.App.4th 414 ............................................................................... 6

*Heller Financial, Inc. v. Midwhey Powder Co.*,
   883 F.2d 1286 (7th Cir. 1989) .......................................................................... 10

*Johansen v. California State Auto Assoc. Inter-Insurance Bureau*
   (1975) 15 Cal.3d 9 ............................................................................................... 8

*Kahn v. Gen. Motors Corp.*,
   889 F.2d 1078 (Fed. Cir. 1989) .......................................................................... 1

*Lou v. Belzberg*,
   834 F.2d 730 (9th Cir. 1987) ............................................................................... 3

*Myers v. Pan American World Airways, Inc.*,
   388 F.Supp. 1024 (D.P.R. 1974) ...................................................................... 10

*Pac. Car & Foundry Co. v. Pence*,
   403 F.2d 949 (9th Cir. 1968) ............................................................................... 3

*Triumph Int'l, Inc. v. Gourmetgiftbaskets.com, Inc.*,
   2016 U.S. Dist. LEXIS 188980, 3-4 (C.D. Cal., 2016) ................................. 1, 3

Statutes

28 U.S.C § 1404(a) .................................................................................................. 1, 3

Other Authorities

CACI 2334 ................................................................................................................. 6

TO THE CLERK, UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA, AND TO ALL INTERESTED PARTIES:

Plaintiffs Certain Underwriters at Lloyd's of London (hereinafter Certain Underwriters) oppose Defendant Lindahl Beck LLP's (hereinafter Lindahl) motion to transfer venue pursuant to 28 U.S.C. 1404(a) on the following grounds:

1. This Court does not have jurisdiction over this case and therefore cannot transfer it to the Southern District. Even after the Court rules on Plaintiffs' Motion for Remand and Phelps Dunbar LLP's (hereinafter Phelps) motion to compel arbitration it still will not have jurisdiction over Plaintiffs' claims against Lindahl and Phelps. By failing to oppose Plaintiffs' Motion for Remand, Lindahl has waived the right to seek transfer.

2. Lindahl is a California defendant headquartered in Los Angeles. Lindahl's malpractice at issue in this case took place in Los Angeles. Furthermore, Los Angeles is a convenient forum. Lindahl employees and Lindahl's file are located in Los Angeles. Lindahl's communications with Plaintiffs and Defendant Phelps also largely took place from Los Angeles. Lindahl had no problem litigating a San Diego case from its Los Angeles office. Los Angeles has an interest in regulating and adjudicating the conduct of attorneys located there.

3. Lindahl improperly seeks to manufacture grounds to transfer venue by arguing that there are multiple witnesses located in San Diego for this case. Given the nature of the claims in this matter, the persons identified in Lindahl's motion are highly unlikely to be witnesses in this case. But even if some of them did testify, the nature and quality of their testimony in relation to the issues in this case are not significant. None of the witnesses identified by Lindahl are "key witnesses." Transferring this matter to San Diego based on Lindahl's list of witnesses would be a case of "the tail trying to wag the dog."

4. Transferring the case to San Diego will not result in further judicial economy or convenience of the parties/witnesses.

This Opposition is based on this Notice, the attached Memorandum of Points and Authorities, and the attached Declaration of Alan Van Gelder and attached exhibits, the pleadings, files and records herein, and upon such other oral and documentary evidence as may be presented at the hearing on the Motion.

DATED: October 3, 2017         GREENE BROILLET & WHEELER, LLP


                               /s/  Alan Van Gelder
                               Alan Van Gelder, Esq.
                               Attorneys for Plaintiffs

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION.

Under 28 U.S.C § 1404(a), a court may transfer an action "to any other district where it might have been brought" "[f]or the convenience of parties and witnesses, [and] in the interest of justice." "[A] transfer is inappropriate when it merely serves to shift inconveniences from one party to the other." *Kahn v. Gen. Motors Corp.*, 889 F.2d 1078, 1083 (Fed. Cir. 1989).

Transfer under 28 U.S.C. § 1404(a) is only available to districts where the case "might have been brought" initially. *Id.* Thus, the "transferee court" must have subject matter jurisdiction, venue must be proper, and the defendants must be subject to personal jurisdiction. The §1404 transfer analysis therefore has two steps: (1) Whether the district to which the moving party seeks to transfer meets the requirement of being one where the case "might have been brought"; and (2) if it does, would transfer serve the interest of the convenience of parties and witnesses, and the "interest of justice." *Triumph Int'l, Inc. v. Gourmetgiftbaskets.com, Inc.*, 2016 U.S. Dist. LEXIS 188980, 3-4 (C.D. Cal., 2016).

As now explained, Lindahl's motion to transfer does not satisfy either of these prongs and should therefore be denied.

## II. THE TRANSFEREE COURT DOES NOT HAVE JURISDICTION.

As set out in more detail in Plaintiffs' Motion for Remand, this case is a claim for legal malpractice originally filed in the Superior Court of California, County of Los Angeles. No Federal causes of action were asserted in Plaintiffs' complaint. Furthermore, Lindahl is a citizen of California and a resident of Los Angeles County. As such, there is no federal jurisdiction over any of Plaintiffs' claims against Lindahl.

Plaintiffs' claims against Lindahl are only in Federal Court due to a removal of this entire matter filed by Defendant Phelps Dunbar. (Hereinafter Phelps). In turn, the sole basis for the Phelps' removal is a claim that Plaintiffs and Phelps entered into

an agreement that contained an arbitration clause. According to Phelps, because plaintiff is a foreign entity, the New York Convention provides this Court with jurisdiction to decide Phelps' motion to compel arbitration. Phelps has since filed a motion to compel Plaintiffs' claims into arbitration. That motion does not seek to compel arbitration of Plaintiffs' claims against Lindahl.

As explained in Plaintiffs' Motion for Remand and Opposition to the Phelps Motion to Compel arbitration, Phelps' motion to compel arbitration should be denied and the entire action should be remanded to state court because there is no agreement between Plaintiffs and Phelps that requires the claims against Phelps to be arbitrated. The agreement relied upon by Phelps never became operative and even if it had, it does not actually contain a provision capable of compelling the claims against Phelps into arbitration. Furthermore, as set out in Plaintiffs' papers no one is alleging the existence of an arbitration agreement between Plaintiffs and Lindahl.

Plaintiffs' Motion for Remand and Phelps' Motion to Compel Arbitration are set to be heard on October 23, 2017. Although Lindahl was given the opportunity to oppose Plaintiff's Motion for Remand, Lindahl did not file any opposition.

Regardless of the outcome of hearings on October 23rd, this Court will not have the jurisdiction to grant Lindahl's motion for transfer of venue. The Court will either: 1) grant Plaintiffs' Motion to Remand/deny Phelps' Motion to Compel, sending the entire matter back to State Court and leaving this Court with nothing to transfer to the Southern District; or 2) grant Phelps' Motion to Compel Arbitration which will send the claims against Phelps to London, England/partially grant Plaintiffs' unopposed motion for remand with respect to Lindahl, leaving this Court with nothing to transfer to the Southern District.

If Lindahl sought to preserve an argument that this matter should be transferred to the Southern District, it should have filed an opposition to Plaintiffs' Motion for Remand and explained how the Court could maintain jurisdiction over Lindahl even

if the Phelps Motion to Compel was granted. Lindahl's failure to act renders its motion untimely. It did not do so and has therefore waived any right to now argue the actions should be transferred. Thus, Lindahl has not me the first prong of the transfer standard.

### III. TRANSFER DOES NOT SERVE THE INTERESTS OF THE CONVENIENCE OF THE PARTIES, WITNESSES, AND INTERESTS OF JUSTICE.

In analyzing the second prong of the transfer standard under §1404, the Court may consider several factors to determine whether the convenience and interest of justice are met by the proposed transfer: (1) convenience to the parties and witnesses; (2) relative ease of access to evidence; (3) availability of compulsory process for attendance of unwilling witnesses; (4) plaintiff's choice of forum; and (5) administrative considerations. *See Decker Coal Co. v Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986); *E. & J. Gallo Winery v. F. & P. S.P.A.*, 899 F.Supp. 465 (E.D. Cal. 1994). The factors are each sub-categories of the three general factors listed in the text of section 1404(a) itself: the convenience of parties, the convenience of witnesses, and the interest of justice. The Court is to interpret these factors broadly, and to apply them to the particular facts of each individual case. *See e.g., Id.* at 466.

When considering a transfer, a court generally gives the plaintiff's choice of forum "great weight" and there must be a "strong showing of inconvenience" to upset that choice. *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987); *Decker Coal Co.*, 805 F.2d at 843. Plaintiff's choice is given less weight, however, where the chosen forum lacks any significant contact with the activities alleged in the complaint. If the operative facts have not occurred within the forum and that forum has no particular interest in the parties or the subject matter, the plaintiff's choice is entitled only to minimal consideration. *Triumph Int'l, Inc., supra*, 4-6 [citing *Pac. Car & Foundry Co. v. Pence*, 403 F.2d 949, 954 (9th Cir. 1968).]

### A. Great Weight Should be Afforded to Plaintiffs' Choice of Forum.

Lindahl does not dispute that Los Angeles County and the Central District are proper venues. Nor could it do so. The Lindahl law firm is located in Los Angeles County and the Central District is its "home court." Even Lindahl's Counsel in this matter is located in the Central District.

Further, Los Angeles/Central District have a significant contact with the activities alleged in the complaint. The decisions that Lindahl made that resulted in the claim of malpractice against it took place in Lindahl's Los Angeles office. Lindahl's communications to Phelps (which are also relevant to this case) also largely came from Los Angeles. The evidence needed to prosecute a claim against Lindahl is also located in Lindahl's files housed in Los Angeles. There is no information relevant to this case in San Diego that cannot also be found in Los Angeles. Furthermore, the malpractice at issue was committed by Lindahl in its Los Angeles office before a single juror set foot in a San Diego Courtroom. Thus, nothing Lindahl argues negates that Plaintiffs' choice of forum is entitled to great weight.

Lindahl's motion has not identified a "strong showing of inconvenience" that is required to deprive Plaintiffs of their chosen forum. Since Lindahl litigated the San Diego Nydegger case from its Los Angeles office, it clearly cannot show that it would be severely inconvenient to defend this action in Los Angeles and not San Diego.

In attempting to argue to the contrary, Lindahl has dramatically overinflated the list of potential witnesses from the San Diego area. (Lindahl lists 11 witnesses. At best the list only includes 1 or 2 names truly relevant to the malpractice case. This is described in greater detail below.) Furthermore, none of the witnesses identified have information significant enough to justify transferring this action from the district where the malpractice by Lindahl occurred and where the chief architect of that malpractice, non-party George Lindahl works.

### B. Defendants are Accused of Exposing Plaintiffs to a Claim of Bad Faith Refusal to Settle Within Policy Limits.

Lindahl argues that this matter is better suited to being tried in the Southern District because the underlying action against Nydegger & Associates (Nydegger) was tried to verdict in a State Court located in San Diego. In making such an argument, Lindahl misapprehends the nature of the case Plaintiffs are pursuing against Lindahl and Phelps.

In 2012 a professional negligence claim was brought against Nydegger. Nydegger was insured under a $1 million professional liability insurance policy underwritten by the Plaintiffs in this action. The policy was an eroding/burning limits policy, meaning that the costs of defense come out of the policy. Although Nydegger and the litigation were both located in San Diego, the Los Angeles law firm of Lindahl Beck, LLP served as defense counsel. Phelps Dunbar, LLP of Louisiana served as coverage counsel for Plaintiffs in the Nydegger litigation. Both Phelps and Lindahl owed Nydegger and Plaintiffs a duty to protect Nydegger and Plaintiffs from a judgment in excess of the policy limits.

Even though Lindahl and Phelps were both located outside the Southern District, both firms had no hesitation about working on the Nydegger litigation.

Plaintiffs contend that due to the malpractice of Phelps and Lindahl, the *Nydegger* litigation was not settled for an amount within the limits of Nydegger's $1 million policy. The malpractice of Phelps and Lindahl exposed Plaintiffs to an insurance bad faith claim in the event an excess judgment was obtained against Nydegger. In September of 2016 a jury found Nydegger liable for $45 million in damages. Due to the malpractice of Phelps and Lindahl, Plaintiffs faced exposure for the full amount of the jury's verdict in the form of a bad faith claim. Plaintiffs resolved the Nydegger litigation for an amount well in excess of the original $1 million policy limits and commenced this action.

As explained in *Graciano v. Mercury General Corp.*, (2014) 231 Cal.App.4th 414, 425, "In each policy of liability insurance, California law implies a covenant of good faith and fair dealing. This implied covenant obligates the insurance company, among other things, to make reasonable efforts to settle a third party's lawsuit against the insured. If the insurer breaches the implied covenant by unreasonably refusing to settle the third-party suit, the insured may sue the insurer in tort to recover damages proximately caused by the insurer's breach." *Ibid.*

As stated in the Judicial Council of California Civil Jury Instruction (CACI) 2334, an insurance company can be held liable for failing to accept a reasonable settlement demand in a lawsuit against the insured if the: 1) lawsuit was covered by the insurance policy; 2) the insurance company failed to accept a reasonable settlement demand for an amount within the policy limits; and 3) the judgment against the insured was greater than the policy limits.

CACI 2334 explains that, "A settlement demand is reasonable if [the insurance company] knew or should have known at the time the settlement demand was rejected that the potential judgment was likely to exceed the amount of the settlement demand based on [the plaintiff in the underlying case]'s injuries or loss and the [insured] probable liability."

It will be undisputed that the claim against Nydegger was covered by Plaintiffs' insurance. It will further be undisputed that the parties suing Nydegger attempted to settle the matter within the limits of the insurance policy and well below the verdict in the case. It will also be undisputed that the judgment obtained against Nydegger was in excess of the policy and various prior settlement demands.[1]

---

[1] The size of the judgment recovered, "furnishes an inference that the value of the claim is the equivalent of the amount of the judgment and that acceptance of an offer within those limits was the most reasonable method of dealing with the claim." *Crisci v. Security Ins. Co. of New Haven, Connecticut*, (1967) 66 Cal.2d 425, 431.

Plaintiffs contend that the malpractice of Lindahl and Phelps exposed them to a claim that they unreasonably failed to accept reasonable settlement demands and resolve the case ahead of trial. Plaintiffs were relying on the advice of Lindahl and Phelps to make decisions regarding settlement and settlement demands. Plaintiffs contend that had Lindahl and Phelps properly advised Plaintiffs, Plaintiffs would have settled the matter prior to trial for an amount within policy limits, substantially lower than what they ultimately paid to settle the case after the excess verdict.

The gravamen of Plaintiffs' claims focus on: 1) what Lindahl and Phelps knew and should have known prior to trial; 2) the actions that Lindahl and Phelps should have taken as a result of such information; 3) the communications between Lindahl, Phelps, and the Plaintiffs prior to trial; and 4) the information/advice Lindahl and Phelps provided/failed to provide to Plaintiffs prior to trial. Thus, the case is deeply connected to conduct and communications emanating from Lindahl's Los Angeles office. The Lindahl attorneys were working on the case from Los Angeles, Lindahl received all its information in Los Angeles, the information/materials/file relied upon by Lindahl are located in Los Angeles, Lindahl communicated with Phelps/Plaintiffs from Los Angeles, and Lindahl crafted strategy and advice at issue and committed malpractice from Los Angeles.

### C. Los Angeles Has a More Significant Connection to the Claims Being Asserted than San Diego.

A central issue in this case is whether the malpractice of Phelps and Lindahl exposed Plaintiffs to a claim that they did not reasonably settle the *Nydegger* matter within the policy limits/exposed Plaintiffs to an excess judgment. The "only permissible consideration in evaluating the reasonableness of the settlement offer becomes whether, in light of the victim's injuries and the probable liability of the insured, the ultimate judgment is likely to exceed the amount of the settlement offer."

*Johansen v. California State Auto Assoc. Inter-Insurance Bureau* (1975) 15 Cal.3d 9, 16.

The fact that the *Nydegger* litigation took place in San Diego plays no role in this analysis. In deciding whether Phelps and Lindahl committed malpractice, the focus will be on what Phelps and Lindahl did with the information from the *Nydegger* litigation once they received it. The decision-making process for the Defendants, as well as the advice they offered or failed to offer did not take place in San Diego. It largely took place in Los Angeles (for Lindahl) and Louisiana (for Phelps). Consider the following example:

Lindahl's motion identifies Robert Wallace as an expert witness hired by the plaintiff in the *Nydegger* matter and argues that Mr. Wallace lives in San Diego.

No one in this case will dispute that Robert Wallace was an expert in the *Nydegger* matter. No one will dispute that he rendered opinions regarding the damage claim against Nydegger. Furthermore, no one will dispute that Lindahl received Wallace's damage opinions.

The question in this malpractice action will be what did Lindahl do <u>after</u> its attorneys received Mr. Wallace's damage opinions? What did Lindahl, <u>from its offices in Los Angeles</u>, tell Phelps/Plaintiffs about Mr. Wallace, his opinions, and his testimony? What recommendations did Lindahl make or fail to make, <u>from its Los Angeles offices</u>, to Phelps/Plaintiffs about the case? Did Lindahl fall below the standard of care because Lindahl did not, among other things, properly evaluate Mr. Wallace's testimony? In the malpractice case, the reaction that Lindahl/Phelps had or should have had to Mr. Wallace's opinions is much more important than the actual opinions of Mr. Wallace. Mr. Wallace had no duty (as an opposing expert witness) to protect Lindahl from committing malpractice. Lindahl cannot blame Mr. Wallace for its own malpractice.

Plaintiffs' Opposition to Defendant Lindahl Beck's Motion to Transfer

In fact, it is doubtful that Mr. Wallace will serve as a fact witness in this case. The Lindahl attorneys have all of Mr. Wallace's opinions from the *Nydegger* case in their file which is located in Los Angeles. The Lindahl lawyers will be able to testify about how they reacted to the opinions, what information/recommendations they made to the Phelps/Plaintiffs and the response from Phelps/Plaintiffs. A subpoena from Lindahl to Wallace would net Lindahl the exact same information obtained from Wallace that is already sitting in Lindahl's Los Angeles file.

In addition to the fact that the Lindahl firm is located in Los Angeles, the lead attorney George Lindahl (who is not a defendant in this matter) resides here. He made all the final decisions with respect to Lindahl's handling of the *Nydegger* action. The decisions by Mr. Lindahl that are relevant to the malpractice claim largely took place in Los Angeles. His conduct is at the heart of Plaintiffs' allegations against Lindahl. His conduct is also relevant with respect to Plaintiffs' claims against Phelps. The information that Mr. Lindahl provided to Phelps from his office in Los Angeles will be relevant to Plaintiffs' claims against Phelps.

In attempting to establish that San Diego plays a significant role in this action, Lindahl's motion features a list of 11 witnesses that Lindahl classifies as San Diego witnesses. The motion improperly argues that because Lindahl can produce a longer list of witnesses from San Diego than Los Angeles, the case belongs in the Southern District.

The determination of whether a particular venue is more convenient for the witnesses should not turn on which party produces a longer witness list. "Rather, the court must look to the nature and quality of the witnesses' testimony with respect to the issues of the case." *Brandon Apparel Group v. Quitman Mfg. Co.*, 42 F.Supp.2d 821, 834 (N.D. Ill., 1999). See also *Triumph Int'l, Inc,. supra*, 2016 U.S. Dist. LEXIS 188980, 7 (C.D. Cal., 2016).

The list of 11 witnesses identified by Lindahl is exaggerated. As discussed below, it is unlikely that most of the 11 witnesses will actually testify in the case. A realistic assessment of the list would reduce it from 11 names to 2 names. (Neil Nydegger and Charles Fanning). Pairing the list down to Nydegger and Fanning is also conservative given that Mr. Nydegger's testimony likely would cover the areas of testimony offered by Charles Fanning.

In any event, whether the list of San Diego witnesses includes 1 name, 2 names, or 11 names it does not matter. George Lindahl is a much more important witness in this legal malpractice case than all of Lindahl's combined list. Mr. Lindahl's relevance to the claims against Lindahl and Phelps dramatically outweighs the testimony of the alleged 11 San Diego witnesses.

### D. The San Diego Witnesses Identified by Lindahl are not Important Enough to Displace Plaintiffs' Choice of Venue.

Lindahl's motion is vague in describing the role the 11 San Diego witnesses would play in this malpractice case. "The movant is obligated to clearly specify the **key witnesses** to be called and make at least a generalized statement of what their testimony would have included." *Amini Innovation Corp. v. JS Imps., Inc.*, 497 F.Supp.2d 1093, 1111 (C.D. Cal., 2017) (Emphasis added). As explained in *Fireman's Fund Ins. Co. v. National Bank for Coops.*, 1993 U.S. Dist. LEXIS 12219, *11-12 (N.D. Cal., 1993):

> The courts with one accord, have refused to let applications for transfer become "a battle of numbers. . . . " The party seeking the transfer must clearly specify the **key witnesses** to be called and must make a general statement of what their testimony will cover. The emphasis must be on this showing rather than on numbers. . . . If a party has merely made a general allegation that witnesses will be necessary, without identifying them and indicting what their testimony will be the application for transfer will be denied. Wright a Miller, § 3851 at 424-28.
>
> The movant is "obligated to clearly specify the **key witnesses** to be called and make at least a generalized statement of what their testimony would have included." *Heller Financial, Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1293 (7th Cir. 1989). The movant must explain why the witnesses' testimony is relevant or necessary. *Myers v. Pan American World Airways, Inc.*, 388 F.Supp. 1024, 1025-26 (D.P.R. 1974). The same considerations apply to

documents a party claims are necessary for the case. The movant must make more than mere generalized allegations that there are many important documents in his preferred forum; he must, at least, explain what these documents are and why they are necessary to the determination of the issues in this case. (Emphasis added.)

Lindahl's motion utterly fails to meet this standard. The Declaration of Alisa Edelson never refers to any of these witnesses as being "key witnesses." Furthermore, Ms. Edelson's declaration and Lindahl's motion are too vague on the anticipated testimony of the witnesses to satisfy Lindahl's burden on the issue of transfer.

As explained below, none of the witnesses identified by Lindahl are "key witnesses" that require transferring the case. Upon closer examination, almost all the witnesses have little or no importance to this malpractice case. Plaintiffs make this argument not to diminish the role that some of these witnesses may have had in securing the verdict against Nydegger. However, with respect to the question of Lindahl and Phelps' malpractice most of these witnesses have little to no value. None of these witnesses helped Lindahl or Phelps commit the malpractice and none of these witnesses have testimony that serves as a defense to the malpractice.

**Alleged Witnesses 1, 2, and 3**: Hooman Asbaghi, Kami Kohani, and Donald Millerd. These witnesses are affiliated with HBA, a plaintiff in the underlying *Nydegger* case. Lindahl claims that these witnesses will have information relevant to the patent at issue in the underlying case and the defense of the underlying case. However, those matters are not at issue in the malpractice case. Years before the verdict in the *Nydegger* matter both Lindahl and Phelps concluded that Nydegger had committed malpractice and would be found liable for malpractice. This case will not feature a re-litigation of whether Nydegger committed malpractice because it is undisputed that there was malpractice.

Lindahl claims that these witnesses will have information regarding damages. Again, while these witnesses may have had information relevant to damages in the *Nydegger* matter, their testimony is unnecessary in the malpractice action.

The claim against Lindahl and Phelps is that but for their malpractice the case would have settled and never gone to trial. This is not a case where the parties will attempt to re-litigate the underlying *Nydegger* trial and where new evidence regarding the damages claims will be presented to the malpractice jury. Instead the evidence will focus on what evidence was produced during the *Nydegger* litigation and how Lindahl and Phelps should have responded to such evidence.

The damage evidence at issue in the malpractice case already exists within Lindahl and Phelps' files. These witnesses are not needed to put such evidence before the jury. At best, all these witnesses would be doing authenticating their previous documents/testimony. It is thus unlikely they would even testify in this case as their information and testimony is already in the file.

**Alleged Witness 4**: Robert Wallace. As discussed above and as discussed with respect to the HBA witnesses, it is unlikely Mr. Wallace would be a witness in this case. If he did provide testimony such testimony would be minor.

**Alleged Witnesses 5, 6, and 7**: Deborah Wolfe, Brian Worthington, and Daryoosh Khashayer.[2] Ms. Wolfe and Mr. Worthington were not trial counsel for the underlying plaintiffs and are from the same firm. Ms. Wolfe was the lead attorney of the two and there is no showing that both Ms. Wolfe and Mr. Worthington's testimony are necessary. Mr. Khashayer took over the case from Ms. Wolfe and was trial counsel for the underlying plaintiffs.

It is anticipated that Lindahl will claim that Ms. Wolfe and Mr. Khashayer have testimony potentially relevant on the issue of settlement demands that the underlying plaintiffs communicated to Lindahl during the *Nydegger* litigation. However, there is no dispute regarding the settlement demands made by the plaintiffs in the *Nydegger* litigation. The demands are contained within Lindahl's Los Angeles file and Phelps'

---

[2] According to Mr. Khashayer's website, his firm maintains offices both in Los Angeles and San Diego.

- 12 -
**Plaintiffs' Opposition to Defendant Lindahl Beck's Motion to Transfer**

Louisiana files. Furthermore, the malpractice case concerns Lindahl and Phelps' reactions to the demands. The thought processes of Wolfe and Khashayer in making the demands are irrelevant to the malpractice claim.

There is nothing else of substance the three attorneys can offer the case. As discussed above, the case will not revolve around re-litigating liability or damages. Additionally, the attorney client privilege and attorney work product protection will likely severely limit the three attorneys from providing testimony beyond authenticating documents and demands which are not even in dispute.

**Alleged witnesses 9 and 10**: Taryl Anderson and Matt Hillman were employed by Nydegger. While they have information relevant to the malpractice committed by Nydegger, as discussed above, the malpractice of Nydegger is not going to be in dispute or re-litigated in the case against Lindahl and Phelps. Neither of them have information relevant to the malpractice case against Lindahl and Phelps that isn't already contained within the files of Lindal and Phelps. Furthermore, this case concerns how Lindahl and Phelps responded to information. As with the other witnesses, at best one could argue they could authenticate previous documents that will already be authenticated by Lindahl.

**Neil Nydegger (witness 8) and Charles Fanning (witness 11)**: Neil Nydegger is the head of the Nydegger firm. He was essentially the client/insured. If given the opportunity to resolve the matter within the limits of the insurance policy, Mr. Nydegger would have agreed to such a settlement. Charles Fanning was an attorney hired by Mr. Nydegger. On behalf of Mr. Nydegger, Mr. Fanning wrote a letter to Phelps, informing Phelps that Nydegger was facing exposure to an excess judgment. He informed Phelps that Mr. Nydegger would bring a bad faith claim against Plaintiffs for any excess judgment. His testimony is potentially duplicative of Mr. Nydegger.

Although Mr. Nydegger and Mr. Fanning are potential witnesses in this matter, they are not "key witnesses" for purpose of a motion to transfer venue. Their anticipated testimony will not be as important or as lengthy as the testimony to be provided by Mr. Lindahl. (Especially Mr. Fanning, given that his communications with Mr. Nydegger are protected by the attorney client privilege.)

## IV. CONCLUSION.

Los Angeles/Central District has a substantial connection to the events that form the basis of this legal malpractice lawsuit. Lindahl's motion fails to justify transferring this matter to the Southern District. The motion should be denied.

DATED: October 3, 2017        GREENE BROILLET & WHEELER, LLP


　　　　　　　　　　　　　　　　/s/ Alan Van Gelder
　　　　　　　　　　　　　　　　Alan Van Gelder, Esq.
　　　　　　　　　　　　　　　　Attorneys for Plaintiffs

# CERTIFICATE OF SERVICE

I hereby certify that on October 3, 2017, I filed the foregoing document entitled **PLAINTIFFS' OPPOSITION TO DEFENDANT LINDAHL BECK, LLP'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. 1404(a); MEMORANDUM OF POINTS AND AUTHORITIES; and DECLARATION OF ALAN VAN GELDER IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANT LINDAHL BECK LLP'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. 1404(a)** with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record in this action.

/s/ Alan Van Gelder
Alan Van Gelder, Esq.